The Hillsboro National Bank *vs.* James E. Hyde.

Opinion filed April 28th, 1898.

**Contracts—Construction—National Banks.**

> Judgment for the defendant sustained on the ground that plaintiff failed to establish the cause of action set forth in the complaint.

Appeal from District Court, Traill County; *Pollock*, J.

Action by the Hillsboro National Bank against James E. Hyde, to recover on an alleged contract. The bank alleged that the respondent James E. Hyde was elected its cashier on the 14th day of January, 1891, upon a salary of $1500 a year in consideration of which he agreed to give his entire time and earnings to the bank. The evidence upon the trial disclosed that during the year 1891, respondent transacted an extensive business in selling real estate on commission out of which he realized five hundred and sixty dollars in notes, and $896 in money, none of which was accounted for to the bank. The correspondence concerning many of his transactions was written upon the letter heads of the bank, and some letters were signed by respondent with the words "cashier" or "Ca" after his signature, many of the land transactions were conducted outside of banking hours. The respondent put in issue the special contract, declared upon, admitted the earning of large commissions in the sale of real estate, but averred that the same was earned outside of banking hours. Verdict and judgment for defendant, and plaintiff appeals.

Affirmed.

*W. P. Miller, F. W. Ames,* and *Cochrane & Feetham*, for appellant.

*Carmody & Leslie,* and *Ball, Watson & Maclay*, for respondent.

Corliss, C. J. The theory of this action presupposes the existence of the most extraordinary contract which has ever fallen under our observation. We question whether it can be paralleled in the history of Anglo-Saxon jurisprudence. The

defendant is alleged to have sold to plaintiff, a national bank, not only his time for a year, but every farthing of his earnings during that period, from whatever source. Previous to the day when this agreement is claimed to have been made, he was cashier of the plaintiff, at a salary of $1,500 per year. When the question of his retention in that office was discussed at the annual meeting of the board of directors, the board favored a reduction of his salary to $1,200. It is then that it is contended that this astonishing agreement was entered into. In consideration of receiving his old salary of $1,500, it is said that defendant agreed not only to devote all his time to the business of the bank, but also to account to it for all his earnings, in whatsoever way they might be acquired. No matter what the character of such work might be, or how large his earnings in these hours of extra toil in his own behalf, all the fruits thereof were to go to swell the profits of the bank. When such an unprecedented contract, creating, while it continued in existence, a condition akin to human slavery, is claimed to have been made, we must exact very clear proof thereof. The case falls far short of meeting this requirement. We think that the alleged agreement, so far from being shown by the evidence, is actually disproved. The witnesses who claim to have made it as directors negative its existence. They purport to give the whole agreement in their testimony, and yet not a word is said by them about earnings. The utmost scope of the contract, as they swear to it, is that defendant was to give all of his time to the bank. Such an agreement is widely different from that which plaintiff has set forth in its complaint. A contract to give all of one's time to the employer does not mean that outside earnings of the employe are to belong to the employer. The servant cannot devote himself to his own business at the expense of his master without violating his contract. But his personal earnings are his own. There is no evidence in the case that the defendant neglected his duties as cashier, in the performance of the work in which

such outside earnings were made. The work performed by him was such as a banking corporation is not authorized to engage in. It consisted principally of the sale of lands by defendant as agent for third persons. A national bank has no right to engage in such a business. The liability of the defendant to the plaintiff, if any, must rest upon the special agreement set forth in the complaint. The allegation is "that it was, in and by the terms of said contract, provided that the defendant should give all his working time to the service of the plaintiff, and all the defendant's earnings, renumerations, revenues, and profits earned or secured in any occupation, employment, business, transaction, and transactions, during said period of service, other than the compensation agreed in said contract to be paid to the defendant by the plaintiff on account of his said services so to be rendered to the plaintiff, should be the property of the said bank." And it is then averred that defendant himself earned certain moneys from third persons, which he has not turned over to defendant in accordance with the terms of such express agreement: "The plaintiff, alleges, upon information and belief, that, during the time the said defendant was in the service and employ of the plaintiff under and pursuant to said contract, the defendant earned and secured, at divers times, from persons other than the plaintiff, certain sums of money, which were paid to, taken and received by, him, for and on account of services rendered to such persons during the time when said defendant was so in the employ and service of the plaintiff; that the money so paid to, taken and received by, the defendant, aggregated a large sum of money, to-wit, the sum of one thousand dollars." As before stated, the very persons who claim to have made this contract failed to testify to it, though they apparently swear to the entire agreement. Mr. Plummer, the president of the bank, appears to have done all the talking for the directors; and we cannot find in his evidence any hint that, if the defendant should earn money on his own account in lines of work foreign to the business of a national bank, such money should be the property of the bank.

Under the contract, as testified to by Mr. Plummer, defendant could not engage in a banking business, over plaintiff's counter, for his own profit. The earnings of such work would belong to the plaintiff, not by reason of any special contract for earnings, but because they would be the earnings of the bank itself; the defendant being under obligations, through his contract, to give the bank all his time,—not to set himself up as a rival banker while actually engaged in the plaintiff's work. But such a case is not before us. Defendant, without neglecting his duties as cashier, acted as agent for others in the sale of real estate,—a business foreign to that of banking,—and in this way earned certain sums of money, which he is entitled to retain, unless it appears that he sold them in advance to the plaintiff. The evidence of only one witness comes near to establishing the alleged contract. In view of the fact that the evidence of the other witnesses for plaintiff—one of them plaintiff's president, and the very man who appears to have done the talking at the meeting of the board of directors—negatives the existence of the contract set forth in the complaint, we are satisfied, considering the extraordinary nature of such an agreement, that the only witness who spoke of "earnings" used the word in the same sense as the word "time." What his testimony means is that defendant was to give the bank the benefit of his whole time in and about the legitimate business of the bank. We do not think that he intended to say that it was understood that if defendant, in spare moments, wrote a book, or taught a night school, or sang in a church choir, the fruits of his extra toil on his own behalf should be swept into the tills of the bank. Taking all the evidence together, and construing it fairly in the light of known business usages, we think that it amounts to no more than this: That defendant should have no right to complain if plaintiff exacted of him exceptional labors in its banking business; that he would give the defendant all his time and energies in the endeavor to make profit for the plaintiff, however long might be the hours of work required, and without reference to the fact that the demands on

him might be unreasonable, in view of the work required of their cashiers by other banks.

As we have reached the conclusion that there was no evidence to support a verdict in favor of the plaintiff, it is obvious that we cannot reverse the judgment, based on a verdict in favor of the defendant, because of errors in the admission of immaterial evidence. Such errors could not possibly have been prejudicial to plaintiff. In any view of the case, it was the duty of the court to direct a verdict for the defendant. Plaintiff cannot complain that the jury have done voluntarily that which they could have been compelled to do under the evidence in the case.

The judgment is affirmed. All concur.