[No. 2787-3.   Division Three.   March 6, 1979.]

APPLEWAY LEASING, INC., *Appellant,* v. TOMLINSON
DAIRY FARMS, INC., *Respondent.*

*Bantz, Klobucher & Clemons* and *John M. Klobucher,* for appellant.

*Roach, Votendahl & Monahan* and *Jerry Votendahl,* for respondent.

GREEN, C.J.—Appleway Leasing, Inc., brought an action for unjust enrichment against Tomlinson Dairy Farms, Inc., for $8,000. The trial court denied relief and Appleway appeals.

The sole issue is whether, under the circumstances of this case, Appleway's agent had the authority to bind it to an agreement with the Dairy Farms.

The facts are undisputed. In September 1973, Tomlinson Dairy Farms leased a truck from Appleway for a 5–year term. Gilbert Tomlinson, president of the Dairy Farms, made monthly payments on the lease until the summer of 1976, when a larger truck on an area dealer's lot caught his eye. He contacted Appleway by telephone to inquire about (1) the possibility of that corporation purchasing the new vehicle and leasing it to his corporation, and (2) the cost of terminating the original lease. He was referred to Hal Etter, a lease broker who worked exclusively for Appleway.

Mr. Etter informed Mr. Tomlinson that it would cost the Dairy Farms approximately $10,000 to buy out the original lease. Mr. Etter also expressed an interest in arranging a lease for the new truck. The dealer, Sinner Mfg. Co., was willing to accept the first truck in lieu of a down payment and to credit Appleway with $8,000. In calculating Tomlinson's new monthly lease payments, Mr. Etter considered the amount due on the new truck after deducting the $8,000, the amount due on the original lease, and Appleway's expected profit on the transaction.

When Mr. Etter presented the figures to Mr. Tomlinson, Mr. Tomlinson was surprised. He later testified that he had felt his corporation would have to purchase the first truck for the buy–out price of $10,000 before it could trade it to Sinner. Instead, Mr. Etter told him that the Dairy Farms would only have to pay the $2,000 difference between the trade–in and pay–off values. Although Mr. Tomlinson told Mr. Etter that the figures were about $8,000 short, Mr. Etter assured him that the figures were correct. Mr. Tomlinson continued to question the figures by telephone and letter. The parties finally entered into the lease, but only after Mr. Tomlinson had obtained a written guaranty from Mr. Etter that the figures would *not* be revised upward. Appleway's general manager and Mr. Tomlinson signed the agreement.

Shortly thereafter, Appleway discovered that an $8,000 error in fact had been made. Mr. Tomlinson refused to pay this amount, and this action followed. The trial court found that Mr. Tomlinson had acted in good faith and that Appleway had entered into the lease with the knowledge of a possible mistake and upon the condition that it would not call on the Dairy Farms for more money. Therefore, it concluded that Appleway had waived any future claims against Tomlinson Dairy Farms in consideration of Mr. Tomlinson executing the lease, and that Appleway had not shown that it was entitled to rescission or reformation of this agreement or that its mistake unjustly enriched the Dairy Farms.

Appleway contends that it cannot be bound by Mr. Etter's agreement when Mr. Tomlinson allegedly knew that Mr. Etter had made a mistake in his figures. In these circumstances, Appleway argues that Mr. Tomlinson should have informed it, as Etter's principal, of the error prior to signing the lease.

Appleway relies on the general rule that an agent breaches his fiduciary duty to his principal if he sells to a third party at too low a price something which he is otherwise authorized to sell. Restatement (Second) of Agency § 424, comment *g* (1958). A third party cannot assume that an agent has authority to sell at an *obviously* low price. Instead, the third party is deemed to have notice of the agent's breach and the court treats him as a constructive trustee of the principal's property. Restatement (Second) of Agency § 314 (1958); *cf. Johns v. Jaycox,* 67 Wash. 403, 407, 121 P. 854 (1912). On the other hand, Tomlinson points out that it is also a well–established rule of agency law that a principal is charged with knowledge acquired by its agent while acting within the scope of his authority. *Chase v. Beard,* 55 Wn.2d 58, 64, 346 P.2d 315 (1959); *Hendricks v. Lake,* 12 Wn. App. 15, 22, 528 P.2d 491 (1974).

Neither party to the agreement alleges that Mr. Etter intentionally breached any duty he owed to his principal, Appleway. Rather, the testimony indicates that Mr.

Etter made a mistake, and that Mr. Tomlinson called it to his attention. Mr. Etter's knowledge of a possible mistake was imputed to Appleway because Mr. Etter acquired this knowledge while negotiating the lease with Mr. Tomlinson, an act within the scope of his authority. Therefore, the real question is whether, in these circumstances, Mr. Tomlinson could hold Appleway to any agreement.

Generally, a defendant is not liable under a contract executed by him as a result of his material unilateral mistake if the plaintiff knows of the defendant's mistake or is charged with knowledge of it. *Puget Sound Nat'l Bank v. Selivanoff*, 9 Wn. App. 676, 681, 514 P.2d 175 (1973). That is not the situation in this case. Here, the trial court specifically found that Mr. Tomlinson acted in good faith and did not contribute to Mr. Etter's mistake. Substantial evidence supports this finding. Mr. Tomlinson stated:

> So I figures by that time, why should I worry about it because they were in the finance business, not me. I am trying to make a living in the dairy business, feeding cows and what have you. For me to tell them how the finance business goes is ridiculous. So I gave up and figures if they go that way, then we would buy the truck.

*Buck v. Equitable Life Assurance Soc'y*, 96 Wash. 683, 165 P. 878 (1917), relied upon by Appleway, is distinguishable. There, the court refused to enforce a life insurance contract, as written, because the insurance company's agent had made a unilateral mistake when he filled in the amount of the policy's cash reserve. The court found that the policyholder knew of the mistake but did not inform the agent of it. To the contrary, Mr. Tomlinson thought there was an error, called it to Appleway's attention, and, after he was assured there was no error, he entered into the lease. The trial judge commented that he could not imagine anyone doing more than Mr. Tomlinson did prior to entering into the lease to call the mistake to Mr. Etter's attention. Courts are always open to receive and enforce equitable considerations. *Buck v. Equitable Life Assurance Soc'y, supra* at 688. The trial court properly concluded that

the equities of the instant case are overwhelmingly on Mr. Tomlinson's side.

Affirmed.

MUNSON and ROE, JJ., concur.