[No. 2910–3. Division Three. May 29, 1979.]

ORGANON, INC., *Respondent*, v. BRIAN P. HEPLER,
*Appellant.*

*Huppin, Ewing, Anderson & Hergert* and *Robert F. Ewing,* for appellant.

*Dellwo, Rudolf & Schroeder* and *Richard J. Schroeder,* for respondent.

GREEN, C.J.—The defendant appeals from a directed verdict and an award of damages in favor of the plaintiff, Organon, Inc. Two issues are presented: (1) Did the trial court err when it decided, as a matter of law, that the defendant had breached his agreement with Organon to refrain from outside business activities while employed by that company? and (2) Did the trial court err when it awarded Organon damages in the absence of any showing that Organon had lost profits as a result of the defendant's breach? We affirm.

In reviewing a directed verdict, the appellate court looks to see whether any evidence or reasonable inference therefrom supports the position of the losing party. *Wold v. Jones*, 60 Wn.2d 327, 329, 373 P.2d 805 (1957). The testimony here was undisputed. When the defendant went to work for Organon as a drug salesman in 1968, he signed the following "Statement of Policy":

The ethical pharmaceutical business is an exacting business and requires the full–time effort of those of us who have chosen this field of endeavor. There is much to learn, as it is necessary for all of us to acquire a medical vocabulary, know medical terminology, have a working knowledge of physiology, know anatomy, chemistry and the chemicals that are a part of the products we are promoting.

The ethical pharmaceutical business is an ever–changing business. All the functions of the human body and the action of all drugs and chemicals is not thoroughly understood. Research brings us many new discoveries each year, better understanding of the human body, more knowledge of drugs and chemicals. We in this industry must keep up with this progress. We must constantly read and study so that we have knowledge of these new developments.

Thus, in order to allow you plenty of time for such reading and studying, *Organon's policy must necessarily prohibit members of the field staff from engaging in any outside business activities whatsoever for financial gain, such as moonlighting in any way,* working at a part–time job in the evening and/or on weekends, selling products, services or merchandise of any type or kind, selling

insurance, subscriptions, real estate or any other com-
modity of any type or kind whatsoever.

In light of the foregoing, you can understand why we
must consider immediate dismissal of an Organon Rep-
resentative who engages in such activities for financial
gain.

I HAVE READ AND UNDERSTAND THE FOREGOING STATE-
MENTS.

/s/ Brian P. Hepler
 Representative

 1/11/68
 Date

(Italics ours.) In the course of his duties, the defendant
dealt with doctors, hospitals, and physician supply compa-
nies. His sales area included Eastern Washington, Northern
Idaho, and all of Montana, and he spent as much as 65
percent of his work time traveling. Therefore, Organon fur-
nished a car for the defendant to use, and paid all of the
defendant's expenses while he was away from home.

In 1973, the defendant became associated with Phone–a–
Gram, a company which manufactures a machine which
interprets electrocardiograms. This machine transmits a
patient's heart reading via telephone to a computer in San
Francisco, the computer interprets the EKG, and the
results are communicated to the doctor within 5 minutes.
The defendant testified that in his dealings with certain
doctors as a representative of Organon, he would ask them
if they were interested in acquiring a Phone–a–Gram for
their office. If the doctor was interested, the defendant
returned during lunch or after his usual work hours to
demonstrate it. Organon was not aware of the defendant's
activities on behalf of Phone–a–Gram and the defendant
specifically stated that he did not tell Organon personnel
about these activities because he "was not sure of their
reaction." However, the defendant also maintained that he
acted for Phone–a–Gram on the condition that his solicita-
tions for that company would not interfere with his duties

for Organon. According to the defendant, no such interference ever developed. In fact, Organon personnel continued to regard him as an outstanding employee during the years in question.

In May 1977, Organon discovered that the defendant was acting as agent for Phone–a–Gram. The defendant's employment was immediately terminated, and the company instituted this action for breach of the Statement of Policy. At trial, the defendant's position was that the Statement of Policy was unreasonable as applied to this particular situation. He argued that Organon could not complain of his activity because Phone–a–Gram was not a competitor of Organon, and he had limited his solicitations for Phone–a–Gram to doctors whom he was already seeing for Organon. Thus, his expenses were not increased by his outside activities. In discussing a directed verdict, the trial judge was of the opinion that these facts did not affect the defendant's liability for breach of the agreement.

The trial court awarded Organon $8,019.53. It arrived at this figure by multiplying the percentage of defendant's total income attributable to Phone–a–Gram commissions by the amount Organon had reimbursed the defendant for his traveling expenses. For example, in 1974, Organon paid the defendant $7,685.17 for expenses. That same year, the defendant collected $8,588.44 from Phone–a–Gram—an amount equal to 36 percent of his total income. Therefore, the court awarded Organon 36 percent of the defendant's expenses, or $2,766.66, in damages for 1974. Damages for 1975 and 1976 were calculated in the same manner.

First, the defendant contends that the question of his liability for the alleged breach was for the jury, and that the trial court erred in directing a verdict for Organon. He argues that the jury could have found that it was unreasonable to apply the Statement of Policy to this situation, where Organon suffered no lost profits as a result of his activities on behalf of Phone–a–Gram. We disagree.

 No prior Washington case has construed an agreement which restricts an employee from engaging in business activities unrelated to the business of his employer.[1] Generally, the courts of other jurisdictions have refused to interpret a contract which requires an employee to devote his whole time and attention to his employment to include time normally devoted to rest and recreation. *Kiker v. Bank Sav. Life Ins. Co.*, 37 N.M. 346, 23 P.2d 366 (1966); *Durwood v. Dubinsky*, 361 S.W.2d 779 (Mo. 1962); *Hillsboro Nat'l Bank v. Hyde*, 7 N.D. 400, 75 N.W. 781 (1898). However, at least one court has noted that a narrowly drawn clause which specifically prohibits an employee from engaging in outside employment because that extra employment impairs his ability to give his best services to his employer will be given effect. *First Calumet Trust & Sav. Bank v. Rogers*, 289 F. 953, 958 (7th Cir. 1923).

In directing a verdict for Organon, the trial court simply enforced the parties' unambiguous agreement. While that agreement does restrict the defendant's freedom of action, it is neither oppressive nor illegal. Moreover, the method used by the defendant in pursuing his work for Phone–a–Gram amounts to a breach of his implied duty of loyalty to his principal. *Cf. Moon v. Phipps*, 67 Wn.2d 948, 954, 411 P.2d 157 (1966). The defendant used the good name of Organon to gain entry to the offices in which he solicited for Phone–a–Gram. He used his Organon expense account to finance his travels, and he drove Organon's automobile while he was on his selling trips. Although the products of

---

[1] Defendant refers us to *Racine v. Bender*, 141 Wash. 606, 252 P. 115 (1927); *Wood v. May*, 73 Wn.2d 307, 438 P.2d 587 (1968); and *Sheppard v. Blackstock Lumber Co.*, 85 Wn.2d 929, 540 P.2d 1373 (1975), which held that covenants not to compete are enforceable only to the extent they are reasonably necessary to protect the goodwill of the employer. We do not find these decisions controlling. A covenant not to compete is in restraint of trade, and such restraints are disfavored. On the other hand, an employer should certainly have the right, subject to constitutional limitations, to condition employment on the employee's promise to refrain from certain activities.

the two companies are different and are not in competition with each other, it can still be said that the defendant used his employment with Organon to his own advantage. *Durwood v. Dubinsky, supra* at 790.

■ ■ Second, the defendant assigns error to the trial court's method of calculating damages. He relies on *National School Studios, Inc. v. Superior School Photo Serv., Inc.*, 40 Wn.2d 263, 242 P.2d 756 (1952), as support for his argument that Organon must prove it lost profits as a result of the defendant's activity before it can collect damages. This decision stands only for the proposition that a plaintiff seeking damages for lost profits for breach of a covenant not to compete must establish the amount of those lost profits with a reasonable degree of certainty. Restatement (Second) of Agency § 404 (1958) states the rule applicable to this case:

> An agent who, in violation of duty to his principal, uses for his own purposes or those of a third person assets of the principal's business is subject to liability to the principal for the value of the use.

Here, the defendant charged all of his traveling expenses to Organon, even though he used his travels to promote Phone–a–Gram's product. The defendant personally profited from the sale of Phone–a–Gram's product while traveling on the expense account of Organon. In the circumstances presented, the trial court was correct when it awarded damages to Organon based upon a proration of expenses between the sales of the products of Organon and Phone–a–Gram. Where the fact of damage has been established, recovery will not be denied because the extent thereof cannot be precisely ascertained, provided there is a sufficient basis for estimating loss. *Jacqueline's Wash., Inc. v. Mercantile Stores Co.*, 80 Wn.2d 784, 786, 498 P.2d 870 (1972). *See Mieske v. Bartell Drug Co.*, 92 Wn.2d 40, 593 P.2d 1308 (1979).

438

Affirmed.

MUNSON and McINTURFF, JJ., concur.