[No. 28741-9-I.    Division One.    December 31, 1992.]

KIEBURTZ & ASSOCIATES, INC., *Appellant*, v. GERALD F. REHN, ET AL, *Respondents*, PHILIP A. KIEBURTZ, ET AL, *Appellants*.

---

*Malcolm L. Edwards* and *Edwards, Sieh, Wiggins & Hathaway, P.S.,* for appellant Kieburtz & Associates.

*Thomas E. Sprague* and *Matsen, Cory, Sprague & Layman,* for appellant Kieburtz.

*Mark C. McPherson* and *Hillis Clark Martin & Peterson,* for respondents.

COLEMAN, J. — Kieburtz & Associates, Inc., et al. (Kieburtz) appeals that portion of a partial summary judgment which dismissed their claims of tortious interference with a contractual relationship or business expectancy and of breach of an employee's duty of loyalty. In addition, Kieburtz appeals the trial court judgments which awarded

damages for breach of an oral agreement to pay equal salaries, awarded damages for breach of an oral agreement to transfer stock, and awarded partial attorney fees. Gerald Rehn, et al. (Rehn) cross-appeals from the trial court's judgments, contending that the trial court erred in failing to award prejudgment interest. In addition, Rehn requests partial attorney fees on appeal. We reverse.

### FACTS ON MOTION FOR SUMMARY JUDGMENT[1]

Kieburtz & Associates, Inc., is a corporation which is solely owned and managed by Philip Kieburtz and which provides consulting services to hospitals or medical clinics seeking to expand or develop new facilities. Such consulting services may include establishing a budget for a proposed project, marketing the project, and accepting bids for construction. To enable clients to decide whether their projects are feasible before substantial costs are incurred, consulting contracts are usually structured in phases. In addition, because clients frequently discontinue their projects only to reinstate them at a later date, the Kieburtz corporation often continues to work with former clients on a nonpaying basis in the hope that its clients' projects will be revived.

Between 1981 and January 1989, Gerald F. Rehn and R. Dean Skorheim worked for the Kieburtz corporation as full-time employees. In addition, during the period of their employment, Rehn and Skorheim negotiated with Kieburtz to become shareholders of the corporation.

In early 1986 Steve Jepson, as president of Safecare and of Gulf Coast Community Hospital, entered into an agreement with Kieburtz & Associates, Inc., to develop an on-campus professional building for the Gulf Coast Community Hospital in Biloxi, Mississippi. In phase one, the Kieburtz corporation developed sufficient data to enable the hospital and the doctors to make informed decisions with regard to the viability of the project. In phase two, the Kieburtz corporation presented the project to members and prospective

---

[1]Because this is a summary judgment motion, we analyze the facts in a light most favorable to the nonmoving party.

members of the medical staff who might be possible equity participants in the project. Gerald Rehn completed both phases on behalf of the Kieburtz corporation.

In June 1986 Safecare determined that completion of the project was not feasible at that time. However, as was the custom, the Kieburtz corporation continued to maintain contact with Gulf Coast Community Hospital and to work on the project in an effort to revive it. This work was performed by Rehn, who logged time on the project in 1986 and 1987.

During the late summer or early fall of 1987, Gulf Coast Community Hospital decided that Kieburtz & Associates, Inc., should be hired to perform additional services. Gulf Coast contacted Rehn. At about that time, Rehn and Skorheim set up their own partnership called Med Associates, and Rehn told Safecare and Gulf Coast that Med Associates would perform the services for them. Safecare and Gulf Coast believed that Med Associates was a subsidiary of Kieburtz & Associates, Inc. Rehn and Skorheim, through Med Associates, entered into a contract with Safecare to perform the same kinds of services that the Kieburtz corporation had previously performed. Rehn and Skorheim did not disclose their new relationship with Safecare and Gulf Coast to Phil Kieburtz.

After Rehn and Skorheim had performed their services for Safecare and Gulf Coast, Rehn and Skorheim charged Safecare $173,269 plus expenses. Rehn and Skorheim were paid $102,563.37 plus expenses and initiated a lawsuit against Safecare for the balance of the account receivable. When Roger Kielman, a vice-president of Safecare, called Phil Kieburtz to see if they could resolve what he thought was a dispute between Safecare and the Kieburtz corporation over the services performed, Phil Kieburtz first learned of the work performed by Rehn and Skorheim through Med Associates.

Kieburtz & Associates, Inc., commenced this action on November 13, 1989, by filing a complaint against Gerald F. Rehn and Margaret Rehn, his wife, and R. Dean Skorheim and Susan Skorheim, his wife, d.b.a. Med Associates, a gen-

eral partnership. The Kieburtz' complaint alleged that Rehn's and Skorheim's conduct constituted tortious interference with the corporation's contract rights and violated Rehn's and Skorheim's duty of loyalty to the corporation.

Defendants Rehn and Skorheim filed an answer, counterclaim, and third party complaint against Philip A. Kieburtz, Jane Doe Kieburtz, his wife, and their marital community. Essentially, Rehn and Skorheim alleged that the Kieburtz corporation and Philip A. Kieburtz had breached an oral promise to make them equal owners in the business and breached an oral promise to pay each of them one-third of the profits of Kieburtz & Associates, Inc.

On June 28, 1990, Rehn and Skorheim moved for a summary judgment dismissing the Kieburtz corporation's claims. Rehn and Skorheim argued that they were "mere employees" and that, as mere employees, they did not owe a fiduciary duty to their employer. In addition, Rehn and Skorheim asserted that they could not be liable for the tort of tortious interference with contractual relationships because, as mere employees, they did not have a duty to refrain from interfering with the business expectancies of the Kieburtz corporation. The Superior Court granted Rehn's and Skorheim's motion for summary judgment on July 20, 1990.

### ISSUES PERTAINING TO SUMMARY JUDGMENT

█ We initially consider whether the Superior Court erred in granting Rehn's and Skorheim's motion for summary judgment, which dismissed Kieburtz' claim for breach of duty. "Summary judgment is appropriate 'if the pleadings, depositions . . . and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 882, 719 P.2d 120 (1986) (quoting CR 56(c)). In reviewing a grant of summary judgment, this court "place[s itself] in the position of the trial court, assuming facts most favorable to the nonmoving party[.]" *Del Guzzi*, at 882.

Kieburtz claims that the Superior Court erred in dismissing by summary judgment its action for breach of the duty not to compete. Essentially, Kieburtz argues that the relationship between Kieburtz, Rehn, and Skorheim was the relationship of master-servant or principal-agent, that Rehn and Skorheim had a duty to Kieburtz because of that relationship, and that Rehn and Skorheim breached that duty by using their own newly formed company to appropriate business which belonged to Kieburtz.

■ The relationship of employer and employee may be based on a contract which is express or implied. *Haugen v. Central Lutheran Church*, 58 Wn.2d 166, 168, 361 P.2d 637 (1961). Similarly, the relationship of principal and agent can arise expressly or by implication, "when one party acts at the instance of and, in some material degree, under the direction and control of another." *Hewson Constr., Inc. v. Reintree Corp.*, 101 Wn.2d 819, 823, 685 P.2d 1062 (1984). During the period of his or her employment, an employee is not "entitled to solicit customers for [a] rival business . . ." or to act in direct competition with his or her employer's business. Restatement (Second) of Agency § 393, comment *e* (1958). In like manner, "[u]nless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency." Restatement (Second) of Agency § 393 (1958).

Rehn and Skorheim argue that, absent an employment contract which imposes a contractual duty of noncompetition, no authority in Washington holds that an employee owes such a duty to his or her current employer. Rehn and Skorheim argue that Washington courts have never accepted section 393 of the Restatement (Second) of Agency. In addition, Rehn and Skorheim note that no Washington cases address the fact pattern presented here in which employees, acting independently, performed work for their employer's clients during the period of their employment.

While there may be no Washington cases which address this precise fact pattern, our courts have referenced the Restatement (Second) of Agency in many prior cases, and it

cannot be argued that the Restatement is irrelevant to decisions made in this jurisdiction. In addition, our courts have accepted rules of agency which are similar to the rule outlined in section 393,[2] and Rehn and Skorheim have presented no rationale which would support a decision to reject the section 393 rule. Finally, courts from other jurisdictions which have addressed the precise issue before this court have adopted the rule of section 393.[3] For the reasons stated, we conclude that the Superior Court erred in granting Rehn's and Skorheim's motion for summary judgment which dismissed Kieburtz' claim for breach of the duty not to compete.

■ The next issue to be determined is whether the Superior Court erred in granting Rehn's and Skorheim's motion for summary judgment which dismissed Kieburtz' action for tortious interference with the corporation's contractual relationship or business expectancy. In *Calbom v. Knudtzon*, 65 Wn.2d 157, 162-63, 396 P.2d 148 (1964), the Supreme Court set forth four elements which must be satisfied to establish a

---

[2]Our courts have acknowledged the duties involved in employee-employer and principal-agent relationships. *See Smith v. Olympic Bank*, 103 Wn.2d 418, 423, 693 P.2d 92 (1985) ("In *Von Gohren* [*v. Pacific Nat'l Bank*, 8 Wn. App. 245, 505 P.2d 467 (1973)], it was held that a bank had notice that an employee was breaching her fiduciary duty when it allowed her to deposit third party checks payable to her employer in her personal account."); *Moon v. Phipps*, 67 Wn.2d 948, 954-55, 411 P.2d 157 (1966) (The "loyalty demanded of an agent . . . creates a duty in the agent to deal with his principal's property solely for his principal's benefit in all matters connected with the agency."); *Organon, Inc. v. Hepler*, 23 Wn. App. 432, 436, 595 P.2d 1314 (1979) ("[T]he method used by the defendant in pursuing his work for Phone-a-Gram amounts to a breach of his implied duty of loyalty to his principal."); *Appleway Leasing, Inc. v. Tomlinson Dairy Farms, Inc.*, 22 Wn. App. 781, 783, 591 P.2d 1220 (1979) ("[A]n agent breaches his fiduciary duty to his principal if he sells to a third party at too low a price something which he is otherwise authorized to sell.").

[3]*See C-E-I-R, Inc. v. Computer Dynamics Corp.*, 229 Md. 357, 366, 183 A.2d 374, 379 (1962) (prior to termination, employee may not solicit employer's customers for a rival business); *Jet Courier Servs., Inc. v. Mulei*, 771 P.2d 486, 496 (Colo. 1989) (agency relationship imposes a duty of loyalty and noncompetition upon the agent).

prima facie case for the tort of intentional interference. *See Pleas v. Seattle*, 112 Wn.2d 794, 800, 774 P.2d 1158 (1989). These four elements were:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. Ill will, spite, defamation, fraud, force, or coercion, on the part of the interferor, are not essential ingredients, although such may be shown for such bearing as they may have upon the defense of privilege.

*Pleas*, at 800 (quoting *Calbom*, at 162-63). In 1989 the *Pleas* court added a fifth element. Now, a plaintiff must also show "that the defendant had a 'duty of noninterference; *i.e.*, that he interfered for an improper purpose . . . or . . . used improper means . . .' " *Pleas*, at 804 (quoting *Straube v. Larson*, 287 Or. 357, 361, 600 P.2d 371, 374 (1979)).

In our view, the affidavits submitted to the Superior Court contained information which could support each of the five elements. Based on those affidavits, a jury could find that Kieburtz had a business expectancy in its relationship with Safecare and Gulf Coast, that Rehn and Skorheim knew about the relationship and expectancy, that Rehn and Skorheim intentionally interfered in Kieburtz' business expectancy by appropriating Safecare's business, and that Kieburtz was damaged as a result. In addition, based on the law of agency, a jury could find that Rehn and Skorheim had a duty of loyalty to Kieburtz which would satisfy the fifth element identified in *Pleas*. Because there was evidence before the court from which a trier of fact could have found the existence of all five elements, the Superior Court erred in granting Rehn's and Skorheim's motion for summary judgment, which dismissed Kieburtz' claim of intentional interference with a contractual relationship or business expectancy.

We reverse and remand for a new trial on all issues.

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

PEKELIS and BAKER, JJ., concur.

Reconsideration denied February 3, 1993.