IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

JEREMY DAVID and MARK
SPRINGER, individually and on behalf
of all others similarly situated,

    Appellants/Cross Respondents,

v.

FREEDOM VANS, LLC, a Washington
limited liability company; and DOES 1-
10,

    Respondents/Cross Appellants.

No. 84867-4-I

DIVISION ONE

UNPUBLISHED OPINION

DíAZ, J. — RCW 49.62.070 places limits on an employer's ability to prohibit its employees from supplementing their income through outside employment. However, restrictions on outside employment are permissible under the statute if they are grounded in obligations under existing law, including the duty of loyalty owed to employers and the duty to avoid conflicts of interest, or the restrictions are "policies addressing" those established obligations. Here, the employer required its employees to agree not to "directly or indirectly engage in any business that competes with the employer," and specifically to refrain from working for any competing business. The trial court granted summary judgment and dismissed a putative class action lawsuit brought, under the statute, by former employees challenging those "anti-moonlighting" provisions of their employment contracts, concluding that the provisions comply with the statute. We agree and affirm. We

also affirm the trial court's decision denying the employer's request for its attorneys' fees.

## I.   FACTS

Freedom Vans LLC, based in Bellingham, converts and customizes vans into mobile houses. In September 2019, Jeremy David, an experienced carpenter, accepted a job with Freedom Vans as a shop assistant. Freedom Vans later promoted David to the position of Foundations Manager. In February 2020, Mark Springer, an automotive mechanic, accepted a position to work as an electrician for Freedom Vans.

In April 2020, Freedom Vans required its current employees, including David and Springer, to sign a "Non-Compete Agreement" (the "agreement"). Among other things, the agreement prohibited Freedom Vans' employees, during their employment, from "directly or indirectly" engaging "in any business that competes" with Freedom Vans. The agreement defined direct or indirect competition, in pertinent part here, to include "becoming an employee of any third party that is engaged" in a "competitive business."

David and Springer signed the agreement. According to their later declarations, after signing the agreement, both employees declined offers to perform repairs and vehicle conversion work from various individuals out of fear of violating the agreement. By June 2021, both David and Springer had terminated their employment with Freedom Vans.

In April 2022, David and Springer (together the "former employees"), individually and on behalf of a class of similarly situated individuals, filed a class

2

action lawsuit against Freedom Vans, alleging that the employment agreement violated RCW 49.62, a statute that largely regulates non-competition clauses in employment contracts. In addition to damages, the former employees sought injunctive and declaratory relief.

Freedom Vans filed a motion for summary judgment, arguing that prohibiting current employees from "directly or indirectly" competing with the employer was permissible under the statute. Freedom Vans asked the court to award fees, arguing that the former employees' lawsuit was frivolous.

Opposing summary judgment, the former employees argued that, since Freedom Vans paid them less than twice the minimum wage, Freedom Vans' "anti-moonlighting polic[y]" violated the statute, which does not allow an employer to prohibit its employees from "working anywhere else." The former employees also pointed out that the statute includes no language limiting its remedies to current employees. See RCW 49.62.080 (providing penalties for violation of the statute including reasonable attorneys' fees, expenses, and costs).

After a hearing, the trial court granted Freedom Vans' motion, but denied its request for attorneys' fees. The court's order provides, in part:

> RCW 49.62 does not restrict an employer's right to require employee loyalty and avoidance of conflicts of interest during the course of employment consistent with the common law. RCW 49.62.070(2)(b). Such a restriction can be express or implied. Kieburtz & Associates v. Rehn, 68 Wn. App. 260, 265, 842 P.2d 985 (Div. 1 1992). Here, Freedom Vans LLC did nothing more than that when it required Plaintiff employees to sign an employment agreement which stated, "During employment for any reason, [NAME] will not directly or indirectly engage in any business that competes with FREEDOM VANS LLC." Attachment 1 to Declaration of Kyleigh Rogers. This restriction is consistent with the common law duty of loyalty,

3

expressed in Washington caselaw as, "During the period of employment, an employee is not entitled to ... act in direct competition with his or her employer's business.["] See Kieburtz, 68 Wn.App. 260, 265, citing Restatement (second) of Agency, sec. 393 comment e (1958). As such, the employment agreement as written is not a violation of RCW 49.62.070, and does not provide a basis for Plaintiff's claims.

The former employees sought reconsideration, arguing that "[i]ndirect competition is not a breach of the duty of loyalty." Freedom Vans also sought reconsideration of the court's decision denying its request for fees, arguing that it was entitled to fees under a separate provision of the agreement. The trial court denied both motions. Both parties appeal.

## II.     ANALYSIS

### A.  Standards of Review

We review a trial court's decision on a motion for summary judgment de novo. Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 281, 313 P.3d 395 (2013). "Summary judgment is proper only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id. We "must view the evidence, and all reasonable inferences from the evidence, in the light most favorable to the nonmoving party, and the motion should be granted if a reasonable person could reach only one conclusion." Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 638, 389 P.3d 498 (2017).

We also review issues of statutory interpretation de novo. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In doing so, we focus on "the plain language enacted by the legislature, considering the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a

whole." <u>Lenander v. Dep't of Ret. Sys.</u>, 186 Wn.2d 393, 403, 377 P.3d 199 (2016). We likewise interpret the language of contracts de novo. <u>Kim v. Moffett</u>, 156 Wn. App. 689, 697, 234 P.3d 279 (2010).

B. <u>RCW 49.62</u>

The legislature enacted RCW 49.62 in 2019 to promote "workplace mobility" and to ensure that agreements that limit workplace competition are not the product of negotiation and are reasonable. RCW 49.62.005. The legislature provided that the statute "shall be construed liberally for the accomplishment of its purposes." RCW 49.62.110.

At issue here is the statute's provision that governs an employer's authority to restrict supplemental employment, RCW 49.62.070. The statute provides:

> Employees having an additional job—When authorized.
>
> (1) Subject to subsection (2) of this section, an employer may not restrict, restrain, or prohibit an employee earning less than twice the applicable state minimum hourly wage from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed. . . .
>
> (2) (b) This section does not alter the obligations of an employee to an employer under existing law, including the common law duty of loyalty and laws preventing conflicts of interest and any corresponding policies addressing such obligations.

C. <u>Validity of the Agreement under RCW 49.62.070</u>

The relevant section of the agreement that Freedom Vans required the former employees to sign provides, in full:

> NON-COMPETE COVENANT. During employment for any reason, [employee] will not directly or indirectly engage in any business that competes with FREEDOM VANS LLC.

1. Directly or indirectly engaging in any competitive business includes, but is not limited to: (i) engaging in a business as owner, partner, or agent, (ii) becoming an employee of any third party that is engaged in such business, (iii) becoming interested directly or indirectly in any such business, or (iv) soliciting any customer of FREEDOM VANS LLC for the benefit of a third party that is engaged in such business. [employee] agrees that this non-compete agreement will not adversely affect [employee's] livelihood.

The former employees contend that the trial court misapplied Washington law when it concluded that the agreement does not violate RCW 49.62.070. It is undisputed that the former employees were paid less than twice the applicable minimum wage, and therefore, according to the former employees, Freedom Vans' restriction on employees' ability to obtain outside employment in section (ii) is presumptively unlawful under RCW 49.62.070(1).[1]

For its part, Freedom Vans contends that the trial court correctly concluded that the challenged provision merely encompasses the common law duty of loyalty owed by an employee as it existed when the statute was enacted, and the restriction is therefore permissible under RCW 49.62.070(2)(b).[2]

_____

[1] There is no claim before us that the agreement's prohibitions on (i) owning or controlling a competitive business, (iii) having a financial interest in such a business, or (iv) soliciting the employer's customers for the benefit of a competitive business, are inconsistent with the common law duty of loyalty. And while it appears that employment with a direct competitor would lead to conflicts of interest, no party argues that the restriction at issue is permissible because it conforms to existing law as to an employee's obligation to avoid conflicts of interest. Thus, on this briefing, we will not further consider the merits of the "conflict of interest" exception.

[2] While it is true that the former employees' positions have shifted during the course of this litigation, they have sufficiently preserved their claim of error relating to the validity of the employment agreement under RCW 49.62 to warrant review, and we therefore reach the merits of their claims on appeal. We further note that Freedom Vans concedes on appeal that the former employees have standing to

6

The statute expressly preserves, but does not codify or explicate, the duty of loyalty. Our resolution of the parties' dispute, first, centers on the scope of the duty and, secondarily, whether the duty may be memorialized in policy to require current employees to refrain from indirectly competing with the principal by accepting employment with a "competitive business."

According to the former employees, this court's decision in Kieburtz & Assoc., Inc. v. Rehn, 68 Wn. App. 260, 265-66, 842 P.2d 985 (1992) and the Restatement (Second) of Agency § 393 (Am. L. Inst. 1958) set forth the "existing law" on the common law duty of loyalty when the statute was enacted. The former employees maintain that, under these and subsequent authorities, the duty of loyalty prohibits only "direct" competition with an employer, such that merely working for a competing business in unrelated "job duties" does not violate the duty.

In Kieburtz, an employer sued two employees for tortious interference after they solicited work for their own separate business from one of the employer's clients. Kieburtz, 68 Wn. App. at 264. In reversing the trial court's dismissal of the claim, this court held that a jury could reasonably conclude that the employees' actions violated a duty of loyalty to their employer. Id. at 267. The court held, "[d]uring the period of his or her employment, an employee is not 'entitled to solicit customers for [a] rival business ...' or to act in *direct* competition with his or her

argue that the agreement at issue impermissibly restricted competition. See Walker v. Munro, 124 Wn.2d 402, 411, 879 P.2d 920 (1994) (to establish standing under the Uniform Declaratory Judgment Act, a party must present a justiciable controversy based on allegations of harm personal to the party that are substantial rather than speculative or abstract).

employer's business."  Id. at 265 (quoting RESTATEMENT (SECOND) OF AGENCY § 393 cmt. e (AM. L. INST. 1958)) (emphasis added).   In so holding, the Kieburtz court expressly and principally relied on the description of the duty of loyalty set forth in the main portion of Section 393 of the Restatement (Second): "'[u]nless otherwise agreed, an agent is subject to a duty not to compete with the principal concerning the subject matter of his agency.'" Id. (quoting the RESTATEMENT (SECOND) OF AGENCY § 393).

The former employees claim that Kieburtz and Section 393 thereby implicitly distinguish between "direct" and "indirect" competition, and conclude that *only* direct competition with an employer contravenes an employee's duty of loyalty, where "direct" means doing the same "job duties" for the competitor.

The former employees cite numerous cases that restate the holding of Kieburtz, but none of that authority supports the position that the duty of loyalty is limited to prohibiting *only* direct competition or solicitation, and none defines the term "subject matter of the [employee's] agency" as an employee's "job duties."  In other words, Kieburtz and its progeny on their face still permit the common law duty of loyalty to preclude assisting another to compete with the principal employer "indirectly" or in ways that are not tied simply to an employee's job description, as long as they are tied to the "subject matter" of the employee's agency.

The former employees also rely on some of the comments to Section 393 to argue that "the subject matter of the employee's agency" is confined to the

employee's specific "job duties."[3]  But the comments to Section 393 do not so limit the scope of that agency and are susceptible to different interpretations.  And the former employees' reading of the "subject matter" of the agency is arguably inconsistent with other related Restatement provisions.  See RESTATEMENT (SECOND) OF AGENCY § 394 (duty not to act for persons whose interests conflict with those of the principal in matters concerning the agency); RESTATEMENT (THIRD) OF AGENCY § 8.04 (AM. L. INST. 2006) (agent has a duty to avoid taking action on "behalf or otherwise assisting the principal's competitors").[4]

In turn, we conclude that the more natural reading of Section 393 is that the duty of loyalty requires a current employee to refrain from competing with the employer with respect to the precise (or "direct") subject matter of the employer's mission, whether that means the employee is performing the same "job duties" or not.  In other words, the duty is a duty not to compete in the principal's direct commercial area, and whether that duty is violated does not turn on the employee's

---

[3] For instance, one of the comments the former employees rely on provides that the employee may use knowledge independently acquired "for all purposes except that of competition with the principal in matters entrusted to him."  RESTATEMENT (SECOND) OF AGENCY, cmt. c.

[4] The former employees aver that no published Washington decisions have cited the Restatement (Third) § 8.04 or the Restatement (Second) § 394 in the context of the duty of loyalty.  But this court has relied on Section 8.04 in unpublished decisions to support the proposition that the duty of loyalty "prevents a current employee from competing with the employer or assisting others to compete with the employer."  Steve Cole Salon, LLC v. Salon Lotus, No. 61342-1-I, slip op. at 11 (Wash. Ct. App. Feb. 9, 2009) [https://perma.cc/J4L5-HGGK] (citing RESTATEMENT (THIRD) OF AGENCY § 8.04 (AM. L. INST. 2006)).  Moreover, agency principles articulated in the Restatement are, in general, relevant to employment relationships.  Kieburtz, 68 Wn. App. at 265.  And like the employees in Kieburtz, the former employees offer no rationale that would support a decision to reject these particular provisions.  Id. at 266.

job description.

More importantly, while the parties' arguments are confined to the scope of the duty of loyalty, we are not so limited because, as explained, we review the statutory and contractual issues de novo. Kim, 156 Wn. App. at 697. Furthermore, we may affirm the trial court's decision on summary judgment on any ground supported by the record, even if the trial court did not consider the argument. See LaMon v. Butler, 112 Wn.2d 193, 200-01, 770 P.2d 1027 (1989).

Here, the statute preserves not only existing legal obligations, including the common law duty of loyalty and obligation to avoid conflicts of interest, but also "*any corresponding policies addressing such obligations*."  RCW 49.62.070(2)(b) (emphasis added).  Whether or not the common law duty of loyalty itself *requires* that current employees avoid working in any capacity for a direct competitor of their current employer, the agreement is undoubtedly a policy that "addresses" obligations imposed by the duty of loyalty.

That is, Freedom Vans chose to define its current employees' duty of loyalty, by policy, to prohibit employment, in any capacity, with a competing business.  And even assuming, as the former employees contend, that Freedom Vans' policy is broader than the common law duty of loyalty, Freedom Vans' policy is entirely consistent with the duty under existing law and advances the same objective.  The purpose of the duty of loyalty is to prevent competition between an employer and its employees in the employer's sphere of business.  In the former employees' view, the duty of loyalty merely prohibits employees from "personally competing" with a current employer.  But Freedom Vans' policy simply does not

allow employees to do indirectly, through assistance to a competing business, what they undisputedly may not do directly.

Moreover, the policy at issue furthers the objectives of the duty of loyalty because a competing business will benefit, directly or indirectly, from the knowledge and skills acquired or refined at the principal place of employment. And the former employees' view that furthering a competing employers' business depends on identity of job duties or title does not reflect the reality of the workplace.

For instance, a Pepsi marketing executive's loyalty would undoubtedly be compromised (even setting aside conflict of interest issues) if that executive also moonlighted as an accounting executive for Coca Cola. This is so because roles and duties in the workplace are often fluid and overlapping. And in many cases, knowledge, skills, and context are applicable to multiple positions. At a minimum, a policy preventing a current employee from working for a direct competitor "addresses" the duty of loyalty and is consistent with that duty.

In sum, notwithstanding RCW 49.62.070(1), RCW 49.62.070(2)(b) allows an employer to restrict its employees' outside employment insofar as the restrictions are consistent with existing law, including the duty of loyalty, duty to avoid conflicts, and policies that secure and further those legal obligations. Policies do and may vary, depending on context. The restriction prohibiting employees from obtaining employment with competing businesses does not contravene the provisions of the statute or its purpose.

D. Cross Appeal—Attorneys' Fees

In its cross appeal, Freedom Vans challenges the trial court's decision denying attorney fees under a provision of the agreement which provides:

> In the event of a dispute between the parties, the parties hereby agree that the prevailing party shall be entitled to reasonable attorney fees and costs incurred as a result of the dispute.

In denying reconsideration, the superior court explained that the former employees raised claims and sought damages under RCW 49.62. "Thus, while the employment agreement was the subject of the dispute, Plaintiff's claims 'arose out' of asserted rights under RCW 49.62, rather than the agreement itself." And the court noted that the attorneys fee provision under the noncompetition statute, RCW 49.62.080, provides only for award of fees to prevailing employees, not employers.

Citing RCW 4.84.330, Freedom Vans argues that attorney fees to the prevailing party under the contractual provision are mandatory. Freedom Vans contends, contrary to the superior court's ruling, that the action arose out of the contract and seeks fees on appeal under the same contract provision.

We disagree with Freedom Vans for two reasons. First, the contractual fee provision Freedom Vans relies on is bilateral and "[b]y its terms, RCW 4.84.330 applies only to contracts with unilateral attorney fee provisions." Kaintz v. PLG, Inc., 147 Wn. App. 782, 786, 197 P.3d 710 (2008). Second, as the trial court ruled, the former employees' cause of action arose out of RCW 49.62.070 and the remedies provided by the statute, rather than out of the agreement. Like the plaintiff in LaCoursiere v. CamWest Dev. Inc., 181 Wn.2d 734, 748, 339 P.3d 963

(2014), the employees' claim was "grounded exclusively" in the statute and they made no claims seeking to enforce the employment agreement.

### III. CONCLUSION

We affirm the court's order on summary judgment and its ruling on fees, and deny fees on appeal. Affirmed.

Díaz, J.

WE CONCUR:

Chung, J.

Smith, C.J.