CITY OF NEWARK, et al., Plaintiffs,

v.

Michael BEASLEY, et al., Defendants.

Civ. A. No. 94–1760.

United States District Court,
D. New Jersey.

April 19, 1995.

As Amended May 5, 1995.

Kevin P. Malone, Lisa A. Taylor, Corp. Counsel, Newark, NJ, for plaintiff City of Newark.

Bradley N. Ruben, Hoboken, NJ, for defendants Beasley and M.L.B. Consultants, Inc.

Mark L. Hopkins, Long Valley, NJ, for W.T.B. Corp.

## OPINION

WOLIN, District Judge.

In this matter the Court is called upon to decide whether plaintiff, the City of Newark ("Newark"), is the owner of three copyrights and five trademarks related to an educational program designed to deter juvenile car theft, known as People Against Car Theft. The Court has bifurcated this matter so that the issues of copyright and trademark ownership could be decided prior to the issues of infringement and damages. As a result, the Court conducted a one day bench trial on the issues of ownership. The following constitutes the Opinion of the Court.

## BACKGROUND

The issues to be decided by the Court are the ownership of copyrights for two literary materials used in conjunction with the People Against Car Theft educational program: (1)

the Student Workbook and (2) the Police Officer's Training Manual. (Trial Exh. 7 and 8). In addition, the Court must decide the ownership of trademarks and servicemarks for (1) the name "People Against Car Theft"; (2) the acronym "P.A.C.T."; (3) the graphic design used on the People Against Car Theft advertising materials; and (4) two slogans used on the advertising materials, hereinafter referred to collectively as "P.A.C.T. materials."

During the trial, plaintiffs stated that they did not claim ownership to any of the art work on the P.A.C.T. materials. As a result, the Court held that defendants own the copyrights to all of the art work and graphic designs on the P.A.C.T. materials. (Tr. at 47).[1] The Court also hereby declares that defendants own the trademarks for the art work and graphic designs used on the P.A.C.T. materials.

## FACTS

The City of Newark claims ownership to the copyrights for the P.A.C.T. literary materials and ownership to the P.A.C.T. trademarks under the theory that the program was created by defendant Michael Beasley while he was an employee of the Newark Police Department. The City claims that under the work-for-hire doctrine it is the owner of all the P.A.C.T. copyrights and trademarks. At trial, the City called only one witness, Police Director William Celester.

### Police Director William Celester

Celester's testimony is of little help to the Court in deciding the issue of ownership. Celester testified that he did not know how much of the P.A.C.T. materials Beasley had created prior to joining the police force. Celester testified that he did not know what, if any, additions or corrections Beasley had made to the P.A.C.T. materials after he joined the police force. Similarly, Celester testified that he did not know how much of the P.A.C.T. materials Beasley created before or after joining the T.A.R.G.E.T. task force, which deals exclusively with auto thefts. (Tr. at 69–72).

Moreover, Celester testified that although he was aware that Beasley was claiming ownership to the P.A.C.T. materials, he said he never entered into any contract that would vest ownership of these materials with the City of Newark. (Tr. at 40–41). In fact, even though Beasley told Celester he had contacted a lawyer regarding ownership issues (Tr. at 54), Celester chose not to draft any type of contract that would vest ownership with the City of Newark.

Celester testified that he first became aware of the P.A.C.T. program in July 1992 when Beasley made an appointment to see him to discuss the program. Celester testified that during this meeting, Beasley presented him with certain written materials. Although, Celester could not remember specifically what written materials he viewed during this meeting, he did remember the materials had the P.A.C.T. name on them. (Tr. at 20). In fact, Celester testified that he did not pay much attention to the written materials because he was primarily concerned with the end result of getting this program into Newark schools. (Tr. at 53–54).

Although Celester testified that he believed the P.A.C.T. program was created exclusively for the City of Newark, he acknowledged that when Beasley showed him the P.A.C.T. materials during their initial July 1992 meeting, Beasley said he wanted to bring the P.A.C.T. program "first" to Newark. (Tr. at 16).

Celester said he was so impressed with Beasley's initiative in creating the P.A.C.T. program that he promoted Beasley to detective. (Trial Exh. 2). Initially Beasley was assigned to central investigations. *Id.* Later, Beasley was assigned to work on the newly formed T.A.R.G.E.T. task force, dedicated exclusively to investigating auto thefts. Celester said he promoted and transferred Beasley so that he would have an opportunity to bring the P.A.C.T. program into Newark schools. (Tr. at 18).

Celester testified that there are no written job descriptions for patrol officers, detectives or members of the T.A.R.G.E.T. task force.

1. "Tr." refers to the transcript of the trial held on April 10, 1994.

(Tr. at 49). Celester said he understood the duties of a T.A.R.G.E.T. task force member to include educating young people about the dangers of car theft. *Id.* However, Celester never indicated whether this oral job description was ever communicated to Beasley or anyone else.

Celester said he was aware of the *Rules and Regulations of the Newark Police Department* (1966, Revised 1982), R. 3:2.9 which states that: "Police Officers shall devote their entire time to the service of the Department." (Trial Exh. 1). This regulation also provides that before an employee can engage in outside employment he must get permission. Celester said he routinely receives requests by officers to conduct outside employment. (Tr. at 48). Moreover, Celester said he grants such requests 99% of the time. *Id.*

Celester testified that after he read in the newspaper that Beasley had sold his P.A.C.T. program to the City of East Orange, New Jersey, he became "upset." (Tr. at 39–40). Shortly thereafter, Celester demoted Beasley to the rank of patrol officer. Celester said the decision to demote Beasley was based, in part, on complaints made by Beasley's superior officers. Beasley's superior officers complained to Celester that they had no idea what Beasley was working on and that they had never seen any of his work. (Tr. at 50–51). Celester also testified that he had no control over Mr. Beasley's work in relation to the P.A.C.T. materials. (Tr. at 35).

**Officer Michael Beasley**

Defendants called one witness at trial, Michael Beasley. In addition, defendants introduced the affidavits of Councilman Ronald Rice and Rocco Malanga, a former P.B.A. president, who corroborated parts of Beasley's testimony.

Beasley stated that he worked as a security guard in low income housing projects for ten years (Tr. at 107), then he became a corrections officer at Northern State Prison. On October 16, 1989, Beasley joined the police force and entered the Newark Police Academy. Some 22 weeks later he became a police officer. (Tr. at 79).

Beasley testified that he learned about the problems of auto theft and gathered ideas about prevention while he worked in the housing projects. (Tr. at 110–112). He testified that his education and experience as a police officer focused solely on enforcement. Beasley testified unequivocally that he learned nothing while he was a police officer that enabled him to create the P.A.C.T. materials. (Tr. at 124).

Beasley said he first conceived of the P.A.C.T. materials in 1988 and at that time made notes. (Tr. at 79). Beasley said he began drafting the Student Workbook and the Police Officer's Training Manual in 1991. (Tr. at 83–84). Beasley said these two literary works were completed by July 1992. (Tr. at 86; 88). Beasley testified he did not use any police department resources—other than an occasional facsimile—to complete these materials. (Tr. at 130–132).

Beasley testified that he did not create the P.A.C.T. materials to benefit his employer, but rather hoped that the P.A.C.T. materials would be used by a number of different cities. Beasley stated: "In my mind, I wanted to first introduce [the P.A.C.T. materials] into the City of Newark. . . . I don't think I had an obligation. I think it was more a fact that I lived in New Jersey, and I worked in Newark and it was leading the nation in auto thefts, so it seemed only right and fair that Newark would be the perfect place to launch the program." (Tr. at 88).

Beasley testified he was always concerned that he retain ownership of the P.A.C.T. materials so that he would be able to sell the materials to other cities. (Tr. at 90). This concern motivated Beasley to contact a lawyer. (Tr. at 80; 120). This concern motivated Beasley to draft the P.A.C.T. materials at home, on his off duty hours. (Tr. at 125). This concern also motivated Beasley to show his completed P.A.C.T. materials to several other people before showing the materials to Celester. (Tr. at 90–91).

This concern also motivated Beasley not to reveal all of his P.A.C.T. materials to Celester. (Tr. at 90–91; 121). Beasley said he expressly chose not to show Celester all of his materials during their August 1992 meeting because he did not want the Newark Police Department to claim ownership. *Id.*

In addition, during his August 1992 meeting with Celester, Beasley verbally claimed ownership to all of the P.A.C.T. materials. (Tr. at 92). Beasley told Celester he would "allow the City of Newark to use" the P.A.C.T. materials. (Tr. at 92). Beasley also claimed ownership by placing copyright symbols on the face of all the materials he showed to Celester. (Tr. at 90–91). In addition, Beasley told Celester he would like "the state and generally anybody that's interested" to use the P.A.C.T. materials. *Id.*

Beasley said he understood his promotion and transfer to the T.A.R.G.E.T. unit was an opportunity for him to bring the P.A.C.T. materials into Newark schools. Beasley said he was not asked by Celester to revise any of the literary materials for P.A.C.T. program. He said after his promotion to T.A.R.G.E.T. "There wasn't anything else to do. . . . It was already done. It was just a matter of going into the schools. That's what I understood my function to be at that point was just to get into—the program into the schools." (Tr. at 95).

## DISCUSSION

### I. The 1976 Copyright Act

At the outset it is important to recognize that under the Copyright Act the author does not obtain dominion over the whole work. Rather certain elements of the work can receive copyright protection. The 1976 Act states:

> In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated or embodied in such work.

17 U.S.C. § 102(b). Thus, under no circumstances can the City of Newark receive copyright protection for the P.A.C.T. "program." Rather, the issue before the Court is whether the City owns the copyrights to certain elements of the P.A.C.T. program. Specifically, the issue before the Court is whether the

City is the owner of copyrights for the literary works entitled "Student Workbook" and Police Officer's Training Manual. (Tr.Exh. 7–8).

### II. Work–For–Hire Doctrine

It is undisputed that Beasley first drafted the Student Workbook and Police Officer's Training Manual in 1990 after he joined the Police Department. These literary materials were completed by July 1992. Therefore, the work-for-hire doctrine is the guiding principle of this matter.

A "work made for hire" as defined by the 1976 Copyright Act consists either of "a work prepared by an employee within the scope of his or her employment" or of certain works specifically ordered or commissioned. 17 U.S.C. § 101. Neither the text of the statute nor the committee reports make any attempt to define the key terms "employee" and "scope of employment."

There is no dispute that Beasley was an employee of the City of Newark. The key question is whether the creation of the P.A.C.T. materials was within the scope of his employment.

*Community for Creative Non–Violence v. Reid,* 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989), instructs that the common law of agency governs the definition of "scope of employment." The Supreme Court held the " 'scope of employment' [is] a widely used term of art in agency law." *Id.* at 738, 109 S.Ct. at 2172.[2]

The Restatement (Second) of Agency § 228 (1958) sets forth a three part test for determining if an employee's conduct is within the scope of his employment:

> 1. It is of the kind of work he is employed to perform;
> 2. It occurs substantially within authorized work hours;
> 3. It is actuated, at least in part, by a purpose to serve the employer.

This test is conjunctive. Thus, to determine whether Beasley's creation of the Student

---

**2.** The Supreme Court in *Reid* held that the employee was an independent contractor and not an employee. Therefore, the Court never had to reach the issue of whether the work was within the scope of employment.

Workbook and Police Officer's Training Manual was within the scope of his employment the City of Newark must prove all three elements set forth in the Restatement (Second) of Agency. *Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568 (4th Cir.1994). As discussed *infra*, during the trial the City of Newark completely failed to meet its burden of proof.

## 1. Kind of Work Employee Hired to Perform

It is only when "an employee creates something in connection with his duties under his employment, [that] the thing created is the property of the employer and any copyright obtained thereon by the employee is deemed held in trust for the employer." *Sawyer v. Crowell Pub. Co.*, 46 F.Supp. 471, 473 (S.D.N.Y.1942), *aff'd*, 142 F.2d 497 (2d Cir.), *cert. denied*, 323 U.S. 735, 65 S.Ct. 74, 89 L.Ed. 589 (1944).

■ Courts deciding whether an employee's project was the "kind of work" the employee was hired to perform rely heavily on the employee's job description. The City of Newark relied on the *Rules and Regulations of the Newark Police Department* (1966, Revised 1982), R. 3:2.9 which states that: "Officers shall devote their entire time to the service of the Department."

There is very little case law construing broad rules like R. 3:2.9. However, one well renown copyright treatise suggests that these clauses are construed very narrowly. "[N]otwithstanding broad contract language the courts [will] often strive, if the language at all permit[s], to limit its effect so as to preclude an employer claiming ownership in works that would be considered outside the scope of the employment agreement." Nimmer, *Copyright*, §§ 5.03[3] at 5–36. At least one court has construed *identical* language as in the Police Department Rule 3:2.9 so as *not* to permit the employer to claim rights to work created by the employee during his leisure hours. *Sheppard Publishing Co. v. Harkins*, 9 Ontario L.R. 504 (1905). Similarly, in a non-copyright case a rule requiring an employee to devote all of his time to his employer was construed as follows: "We do not think ... it was understood that if the defendant in spare moments wrote a book or taught a night school or sang in a church the fruits of his extra toil on his own behalf should be swept into the tills of the bank." *Hillsboro National Bank v. Hyde*, 7 N.D. 400, 403, 75 N.W. 781 (1898). This Court finds that Rule 3:2.9 is insufficient to establish the scope of employment of a patrol officer or a member of the T.A.R.G.E.T. task force embraced the creation of education materials for students at Newark public schools.

■ Another factor courts look to when determining whether an employee's project was the kind of work he was hired to perform is the degree of control the employer had over the employee's project. In this case, Celester testified that Beasley's superior officers had no idea what he was working on. Thus, the City of Newark had no control over Beasley's creation of the P.A.C.T. materials.

Courts also examine whether the employee relied solely on knowledge gained within the scope of his employment to create his project. In this case, Beasley testified unequivocally that he learned nothing about auto theft prevention or education while he was a police officer for the City of Newark. He testified that he learned about auto theft and prevention during the ten years he spent working in low income housing projects. This testimony was uncontroverted.

Because the City of Newark had no control over Beasley's creation of the P.A.C.T. materials and Beasley's position as a police officer was not the source of his knowledge, the Court finds that the creation of the Student Workbook and Police Officer's Training Manual was not the kind of work Beasley was hired to perform.

## 2. Use of Authorized Work Hours

The second prong of the work-for-hire test required the City of Newark to prove that Beasley used authorized work hours to create the P.A.C.T. Student Workbook and the Police Officer's Training Manual. Again, the City of Newark utterly failed to meet its burden of proof. Beasley testified that he drafted these literary materials at home during off hours. Beasley testified that he did not use City facilities to create these materi-

als. The City of Newark introduced no evidence to contradict this testimony. Therefore, the Court finds that Beasley did not use any authorize work hours to create the P.A.C.T. Student Workbook of the Police Officer's Training Manual.

### 3. Actuated by Desire to Serve Employer

The third prong of the work-for-hire test asks whether Beasley was motivated by a desire to serve the Newark Police Department when he created the Student Workbook and the Police Officer's Training Manual. *Avtec Systems, Inc. v. Peiffer*, 21 F.3d 568 (4th Cir.1994) (quoting, Nimmer, *Copyright*, § 503 at 5–33). The City of Newark was required to prove at trial that Beasley was at least "appreciably" motivated by a desire to further the goals of the of Police Department in order to satisfy the third element of the work-for-hire test. *Id.* (quoting Restatement (Second) of Agency § 236 cmt. b). Beasley's acts fall beyond the scope of employment if "done with no intention to serve [his] master." Restatement (Second) of Agency § 235. The City of Newark introduced no evidence that Beasley's motivation in developing the P.A.C.T. program was to benefit the Newark Police Department. On the other hand, Beasley testified that he was not motivated to create the P.A.C.T. materials to benefit his employer, but rather hoped that the P.A.C.T. materials would be used by a number of different cities. Therefore, the Court holds that Beasley was not motivated by a desire to serve his employer when he created the Student Workbook and the Police Officer's Training Manual.

In sum, plaintiff failed to prove that Beasley's creation of the P.A.C.T. materials was the kind of work he was hired to perform; that he created those materials during authorized work hours; or that he was motivated by a desire to serve his employer. Because the City of Newark has failed in its burden of proof on all three prongs of the work-for-hire test, the Court finds that Beasley's creation of the Student Workbook and the Police Officer's Training Manual was not within the scope of his employment.

### III. Lanham Act

Defendants seek a ruling from this Court that they are the owners of trademarks for the term "P.A.C.T.," the title "People Against Car Theft", the slogan "auto theft—stop the madness" and the slogan "stolen cars = lethal weapons" pursuant to the Lanham Act, 15 U.S.C. § 1127. Arguably, "P.A.C.T." and "People Against Car Theft" are both trademarks that identify the literature and service marks that identify the program.

Trademark and servicemark rights are established by public use of a mark. There is no set formula as to the quantity of use required to establish mark rights. The general rule is that mark rights are not created by sporadic or de minimis use. In this case, defendants introduced evidence indicating more than de minimis use of their marks. Defendants have used these marks in connection with the City of Newark and in connection with the sale of the P.A.C.T. program to the City of East Orange, New Jersey. Critically, the City of Newark introduced no evidence that it ever publicly used these marks.

In assessing the strength of a trademark the Court must first identify which type of trademark it is. Defendants suggest that their marks are fanciful. Plaintiffs offered no opposition. Therefore, the Court finds that defendants' marks are fanciful. The acronym "P.A.C.T." and the phrase "People Against Car Theft" are not descriptive or suggestive, and, therefore, these marks are fanciful. As a result, these marks are protectable immediately upon use, without any proof of secondary meaning.

Therefore, the Court holds that defendants are the owners of trademarks and servicemarks for "P.A.C.T" and "People Against Car Theft." The City of Newark has never publicly used either of these marks and therefore cannot claim to be the owners of these marks.

The slogans "auto theft—stop the madness" and "stolen cars = lethal weapons" are instructional slogans and are not protectable under the Lanham Act.

**10**

## CONCLUSION

For the reasons set forth herein, the Court finds that defendant Michael Beasley is the owner of literary copyrights for his P.A.C.T. Student Workbook and the Police Officer's Training Manual. These literary works were not created within the scope of Beasley's employment. The Court also finds that defendant Michael Beasley is the owner of trademarks and servicemarks for "P.A.C.T." and "People Against Car Theft." The Court also finds that defendants are the owners of the copyright on the graphic design and the trademark on the logo used on the P.A.C.T. materials.