William R. SHAUL, Plaintiff,

v.

CHERRY VALLEY–SPRINGFIELD CENTRAL SCHOOL DISTRICT; Thomas E. Marzeski, Superintendent; Charles W. Strange, Secondary Principal; Charles F. Culbert, Elementary Principal; John Does 1–4, Custodians; Defendants.

No. 00–CV–715.

United States District Court, N.D. New York.

Aug. 20, 2002.

Peter Henner, Esq., Clarksville, NY, for Plaintiff.

Frank W. Miller, Esq., Syracuse, NY, for Defendant.

*MEMORANDUM–DECISION and ORDER*

HURD, District Judge.

## I. *INTRODUCTION*

On May 8, 2000, plaintiff William R. Shaul ("Shaul" or "plaintiff") commenced the instant action, pursuant to 42 U.S.C. § 1983 alleging that the defendants violated his Fourth Amendment rights. Defendants Cherry Valley–Springfield School District ("School District"), Superintendent Thomas E. Marzeski ("Superintendent Marzeski"), Secondary Principal Charles W. Strange ("Principal Strange"), and Elementary Principal Charles F. Culbert ("Principal Culbert") (collectively re-

ferred to as "the defendants") move for summary judgment pursuant to Fed. R.Civ.P. 56. Plaintiff opposes. Oral argument was heard on November 9, 2001, in Utica, New York. Decision was reserved.

## II. FACTS

Shaul was and is a tenured teacher at the School District, since 1969. In a 1990 administrative hearing, he was found guilty of having an inappropriate relationship with a female student. In November of 1998, as a result of an investigation performed by the School District into alleged improprieties toward another young female student, plaintiff was suspended with pay on January 15, 1999 to March 10, 2000, and ordered to remain off school property. On March 10, 2000, he was again found guilty in an administrative hearing and was placed on unpaid suspension from March 10, 2000, to June 30, 2000. He resumed teaching in the fall of 2000.

When plaintiff was suspended on January 15, 1999, he was directed in writing by Superintendent Marzeski to meet him on January 19, 1999, at 4:00 p.m. to return school property and remove his personal belongings from his classroom. He did not attend this meeting because he wanted a representative of the New York State United Teacher's Union to accompany him. He did deliver school materials and keys in his personal possession to a colleague who returned those items to the school.

On January 29, 1999, plaintiff, accompanied by Principal Strange and Teacher Association President Gnau, was allowed to entered the school for about one and one half hours to collect his personal effects. His previously assigned classroom was extremely cluttered, with both school and personal items mixed in numerous boxes, a desk, and three file cabinets, one of which was locked. Consequently, he was unable to extract all of his belongings in the time allotted.

On January 30, 1999, Superintendent Marzeski directed Principals Strange and Culbert to return to plaintiff's former classroom to clean out the room and prepare it for instructional use. They sorted items into categories labeled Shaul, the school, students, former students, or parents, and items to be discarded. They cleaned out the locked file cabinet by drilling the lock open. During the course of sorting, they found a photo of "Monica," the student from the 1990 incident, a car phone, personal correspondence, and a notebook that they attempted to introduce as evidence at plaintiff's disciplinary hearing. The hearing officer rejected these items.

In February 1999, Shaul went to the school and picked up a box containing his sorted personal belongings. He alleges that he never received volumes of educational material, two laser pointers, athletic memorabilia, books, and personal letters and mementos. The defendants allege the cleaning process had to be completed to prepare the room for instructional use.

Plaintiff first claims that Principals Strange and Culbert conducted an unconstitutional search of his assigned room, and during this search unconstitutionally seized property belonging to him in violation of his Fourth Amendment rights. His second cause of action seeks punitive damages against the individual defendants. His final cause of action claims that the School District showed deliberate indifference to his constitutional rights by trying to use some of the items found during the search in the March 10, 2000, administrative hearing, effectively condoning the illegal acts of the School District's employees.

As to the plaintiff's illegal search claim, the defendants assert that Shaul did not have an expectation of privacy in anything within his assigned classroom and accordingly there was no illegal search. With

respect to the illegal seizure claim, the defendants contend that plaintiff abandoned his property, and in the alternative, the School District owned the educational materials found in plaintiff's former classroom under the work for hire doctrine in copyright law. As to plaintiff's second claim, Superintendent Marzeski, Principal Strange, and Principal Culbert argue that they are entitled to qualified immunity. Lastly, the School District maintains Shaul has failed to state a cause of action under 42 U.S.C. § 1983 against the municipality.[1]

## III. *DISCUSSION*

### A. *Summary Judgment Standard*

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v. Steingut*, 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "[t]he nonmoving party may not rely on conclusory allegations or unsubstantiated

speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir.1998). The court's function "is not ... to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249, 106 S.Ct. 2505. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. *Fourth Amendment*

#### 1. *The Illegal Search Claim and Shaul's Expectation of Privacy*

The Fourth Amendment assures "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment is only applicable if the claimant (1) can "demonstrate that he personally has an expectation of privacy in the place searched," and (2) "that his expectation of privacy is reasonable; i.e., one that has a source outside of the Fourth Amendment, either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society." *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (citations omitted).

If there is no reasonable expectation of privacy, "a workplace search by a public employer will not violate the Fourth Amendment, regardless of the search's nature and scope." *Leventhal v. Knapek*, 266 F.3d 64, 73 (2d Cir.2001). Plaintiff did not own the furniture in the classroom. However, "[o]ne need not be the owner of

1. The defendant makes an argument about state law claims, but plaintiff responded that he has not alleged any state law claims. Accordingly, this argument is moot.

the property for his privacy interest to be one that the Fourth Amendment protects, so long as he has the right to exclude others from dealing with the property." *United States v. Perea,* 986 F.2d 633, 639–40 (2d Cir.1993).

In *O'Connor v. Ortega,* the Supreme Court agreed that the plaintiff, a state hospital doctor, had a reasonable expectation of privacy in his office desk and file cabinets, which he did not share with anyone, where he stored private correspondence with patients unaffiliated with his employment, medical files, personal correspondence, financial records, and mementos. *See* 480 U.S. 709, 718, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987) (plurality opinion); *id.* at 731, 107 S.Ct. 1492 (Scalia, J., concurring); *id.* at 732, 107 S.Ct. 1492 (Blackmun, J., dissenting). However, the Court acknowledged that some government offices that "are continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits … may be so open to fellow employees or the public that no expectation of privacy is reasonable." *Id.* at 717–18, 107 S.Ct. 1492 (plurality opinion) (citations omitted). "Public employees' expectation of privacy in their offices, desks, and file cabinets … may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *Id.* at 717, 107 S.Ct. 1492. "[T]he question whether an employee has a reasonable expectation of privacy must be addressed on a case-by-case basis." *Id.* at 718, 107 S.Ct. 1492.

■ In the present action, plaintiff's former desk and file cabinets were in a public school classroom open to students, colleagues, custodians, administrators, parents, and substitute teachers. This was not a private office and he did not have exclusive use of any of the furniture in the room. *Cf. Leventhal,* 266 F.3d at 73–74 (holding that the plaintiff public employee

had a privacy interest in his computer after considering he had exclusive use of his desk, file cabinets, and computer in his private office).

More to the point, Shaul was given an opportunity to remove personal property from the classroom on January 19, 1999, at which time he knew students continued to report to his former classroom and were being taught by another teacher. Plaintiff did not enter the school until January 29, 1999, when he spent about one and one half hours in the classroom, ten days after the initial scheduled meeting date. If plaintiff expected the items stored in the classroom to be private and inaccessible to others, he should have retrieved those items on January 19 or certainly on January 29, 1999.

Based upon the particular facts of this case, Shaul did not have a reasonable expectation of privacy in his former desk or file cabinets.

### 2. *The Illegal Seizure Claim*

■ The defendants maintain two arguments against plaintiff's illegal seizure claim. Their first argument is that the plaintiff abandoned his property. To prove abandonment of property, the defendants need "proof both of an owner's intent to abandon the property and of some affirmative act or omission demonstrating that intention." *Hoelzer v. City of Stamford, Conn.,* 933 F.2d 1131, 1138 (2d Cir. 1991). "The abandonment of property is the relinquishing of all title, possession, or claim to or of it—a virtual intentional throwing away of it. It is not presumed. Proof supporting it must be direct or affirmative or reasonably beget the exclusive inference of the throwing away." *United States v. Cowan,* 396 F.2d 83, 87 (2d Cir. 1968) (quoting *Foulke v. N.Y. Consol. R. Co.,* 228 N.Y. 269, 273, 127 N.E. 237 (1920)).

■ Shaul has maintained that he is the rightful owner of the items found in the desk and file cabinets in his former classroom. Accordingly, because plaintiff has never disclaimed the items found in the classroom, there was no abandonment of property. *Cf. United States v. Springer*, 946 F.2d 1012, 1017 (2d Cir.1991) (finding that because defendant-appellee consistently disclaimed any ownership of a suitcase, the FBI agents seizure of this suitcase did not violate his Fourth Amendment rights).

The defendants' second argument claims that the tests, quizzes, and other educational material found in plaintiff's former classroom belong to the School District under the work for hire doctrine found in the Copyright Act of 1976. Copyright ownership usually "vests initially in the author or authors of the work." 17 U.S.C.A. § 201(a) (West 1996). However, "work made for hire" is defined as "a work prepared by an employee within the scope of his or her employment."[2] 17 U.S.C.A. § 101 (West Supp.2002). "In the case of work made for hire, the employer ... is considered the author ... and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright." 17 U.S.C.A. § 201(b) (West 1996).

■ In determining whether copyrighted work is work made for hire, the hired party that created the work has to be an employee under the common law of agency. *See Cmty. for Creative Non–Violence v. Reid*, 490 U.S. 730, 751, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989). The Supreme Court has identified thirteen factors to consider in determining if one is an employee.[3] It is well established that tenured public teachers are employees who have a constitutionally protected property interest in their employment. *See Shaffer v. Schenectady Sch. Dist.*, 245 F.3d 41, 44 (2d Cir.2001) (quoting *Gould v. Board of Educ.*, 81 N.Y.2d 446, 451, 599 N.Y.S.2d 787, 616 N.E.2d 142 (1993)); *DeMichele v. Greenburgh Cent. Sch. Dist. No. 7*, 167 F.3d 784, 789 (2d Cir.1999); *see also West v. City of New York*, No. 78 CIV.1981, 1985 WL 202, at *25 (S.D.N.Y. Jan. 19, 1985) (declaring a public city employee's creation of a chart on her own time is subject to the work for hire doctrine because the chart represented work she had done during work hours). Accordingly, the work made for hire doctrine applies in this case to

---

2. There is a second definition under "work made for hire" stating that the author retains ownership when,

> a work [is] specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U.S.C.A. § 101(West Supp.2002). This second definition is not applicable to this case because there has been no express written agreement between the parties designating plaintiff's work product as work made for hire and plaintiff's work was not specially ordered or commissioned.

3. The factors are,

> the hiring party's right to control the manner and means by which the product is accomplished ... the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Reid*, 490 U.S. at 751–52, 109 S.Ct. 2166 (citations omitted).

Shaul's tests, quizzes, and other educational materials produced in furtherance of his employment duties as a public teacher.

■ Plaintiff's illegal seizure claim fails. A seizure of property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook County, Ill.*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). Shaul does not have a possessory interest in the educational materials he used to teach his students, which makes up the bulk of his illegal seizure complaint.

As for the two laser pens, coaching memorabilia, and other personal items, plaintiff had two opportunities to collect personal belongings from the classroom on January 19 and 29, 1999. In addition, Shaul retrieved the sorted items on February 19, 1999. The fact that Principals Strange and Culbert attempted to use some of the articles obtained from the classroom on January 30, 1999, in proceedings against the plaintiff is of no consequence since he had no possessory interest in the articles he left behind on January 19 and 29, 1999. Furthermore, Shaul had no expectation of privacy in any articles that he failed to retrieve on January 19 and 29, 1999. There was no interference with possessory interests in the items obtained on January 30, 1999, and therefore no illegal seizure.

Accordingly, the defendants are entitled to summary judgement as to plaintiff's first claim, because no reasonable jury could return a verdict for the plaintiff. *See Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Elec. Indus.*, 475 U.S. at 586, 106 S.Ct. 1348. Plaintiff's first cause of action must be dismissed.

**C. *Punitive Damages***

Since plaintiff's first cause of action must be dismissed, no claim for punitive damages can lie.[4] Accordingly, the defendants are entitled to summary judgment as to plaintiff's second cause of action.

**D. *Municipal Liability***

Because there was no violation of plaintiff's constitutional rights there can be no recovery against the School District. However, that claim will be briefly discussed.

■ A section 1983 claim against a municipality cannot be substantiated "*solely* because it employs a tortfeasor." *Monell v. Dep't of Soc. Serv. of New York*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (emphasis in original). The predicate claim against the municipality must be based on an official policy, ordinance, regulation, or decision formally adopted by that body's officers. *See id.* at 690–91, 98 S.Ct. 2018. A municipality also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such custom has not reached formal approval through the body's official decision-making channels." *Id.; Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 870 (2d Cir.1992). Thus, an unconstitutional governmental policy may be inferred either from official pronouncements and actions of a governmental agency, or from custom. A single decision by a municipal official with final policy making authority may also create a municipal policy. *See Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *see also Krulik v. Board of Educ.*, 781 F.2d 15, 23 (2d Cir.1986) (stating that "an individual official's acts can rise to the level of 'policy'

---

4. The individual defendants also claim they are entitled to qualified immunity. This argument is not reached since plaintiff's first cause of action has been dismissed.

when 'senior personnel' knowingly 'acquiesce' in their subordinates' behavior").

 Plaintiff did not allege any official policy in his complaint. Plaintiff did not designate an official policy-maker who had actual or constructive knowledge of and acquiesce in their subordinates' alleged unconstitutional custom or practice. Plaintiff's only alleged incident of the School District's deliberate indifference to constitutionally protected rights is the incident alleged in the present action. Citing one alleged incident does not constitute a policy "so manifest as to imply the constructive acquiescence of senior policy-making officials." *Sorlucco*, 971 F.2d at 871.

Furthermore, Shaul's complaint offers no causal connection between the School District's deliberate indifference and the alleged illegal search and seizure that took place in the classroom, such as improper training and supervision, or gross negligence committed by the officials in charge. *See Batista v. Rodriguez*, 702 F.2d 393, 398 (2d Cir.1983). All that plaintiff offers as a causal link is the fact that the School District tried to introduce some of the items obtained from his former classroom in an administrative hearing, which is insufficient to support a policy or custom claim against the School District.

Accordingly, the plaintiff's complaint against the School District must be dismissed for failing to state a claim on which relief could be granted.

## IV. CONCLUSION

There is no genuine issue for trial on the issue of an illegal search and seizure of the contents in plaintiff's former classroom. Thus, no award for punitive damages can be granted. Shaul's cause of action against the municipality fails to state a claim.

Accordingly, it is

ORDERED that

1. The defendants' motion for summary judgment is GRANTED; and

2. The complaint is DISMISSED in its entirety.

The Clerk of the Court is directed to enter judgment accordingly.

IT IS SO ORDERED.