363 F.3d 177
 William R. SHAUL, Plaintiff-Appellant,
v.
CHERRY VALLEY-SPRINGFIELD CENTRAL SCHOOL DISTRICT, Thomas E. Marzeski, Superintendent, Charles W. Strange, Secondary Principal, Charles F. Culbert, Elementary Principal, John Does 1-4, Custodians Defendants-Appellees.
 Docket No. 02-9082.
 United States Court of Appeals, Second Circuit.
 Argued March 27, 2003.
 Decided March 25, 2004.
 
 COPYRIGHT MATERIAL OMITTED Peter Henney, Clarksville, NY, for Plaintiff-Appellant.
 Frank W. Miller, The Law Firm of Frank W. Miller, East Syracuse, NY, for Defendants-Appellees.
 Before: B.D. PARKER, Jr., RAGGI, Circuit Judges, and GOLDBERG,* Judge.
 GOLDBERG, Judge.
 
 
 1
 Plaintiff William R. Shaul filed suit against defendants, the Cherry Valley-Springfield School District ("the School District"), Superintendent Thomas E. Marzeski, Secondary Principal Charles W. Strange, Elementary Principal Charles F. Culbert, and four John Doe custodians, pursuant to 42 U.S.C. § 1983, in the United States District Court for the Northern District of New York (Hurd, J.). Defendants were responsible for sorting and removing items from plaintiff's classroom following his suspension from the school. At the time plaintiff was a teacher employed by the School District. Plaintiff alleges that defendants' actions constituted an illegal search and seizure of his property in violation of his rights under the Fourth Amendment to the U.S. Constitution. Plaintiff asserts that the School District is also liable because its actions were in furtherance of a municipal custom, policy, or practice. Defendants deny plaintiff's allegations. In addition, Superintendent Marzeski, Secondary Principal Strange, and Elementary Principal Culbert argue that they are entitled to qualified immunity from suit.
 
 
 2
 By memorandum-decision and order dated August 20, 2002, the district court awarded summary judgment in favor of defendants and dismissed plaintiff's complaint, ruling that Shaul could not challenge defendants' search of the classroom because, at the relevant time, he had no reasonable expectation of privacy in the room or its contents. The district court further concluded that Shaul could not complain of an unlawful seizure because he forfeited any possessory interest he may have had in various items by failing to retrieve them on the opportunities afforded. See Shaul v. Cherry Valley-Springfield Central School Dist., 218 F.Supp.2d 266, 269-72 (N.D.N.Y.2002).
 
 
 3
 Shaul now appeals this ruling, challenging the district court's conclusion about his expectation of privacy in his classroom generally and in the locked file cabinet in particular. He further argues that defendants' failure to afford him sufficient time to retrieve his property precluded a finding that he had surrendered his privacy or possessory interests in his property.
 
 
 4
 We consider the following issues: (1) whether Shaul had a reasonable expectation of privacy in his assigned classroom and if so, whether defendants' challenged search of the classroom and removal of Shaul's personal property was constitutionally reasonable; and (2) whether defendants' failure to return all of Shaul's personal property was a separate unreasonable seizure.
 
 
 5
 For the reasons stated herein, we affirm the district court's decision.
 
 BACKGROUND
 
 6
 Shaul has been a high school mathematics teacher employed by the School District since 1969. During his tenure, he has been subject to two separate disciplinary proceedings. In 1990, Shaul was found guilty of having an inappropriate relationship with a female student. In November 1998, Shaul was accused of sexually harassing another female student, a sophomore then assigned to his homeroom and math class. On or about January 13, 1999, Shaul was arrested for stalking the first female student, with whom he had later become romantically involved. In a letter dated January 14th, Superintendent Marzeski requested that Shaul provide any documents associated with the January 13th arrest. On January 15th, Shaul was suspended with pay and subsequently reassigned to an administrative position in the School District. On March 10, 2000, a hearing officer found Shaul guilty of the alleged misconduct in the November 1998 incident and suspended him without pay for the remainder of the 1999-2000 academic year. In the fall of 2000, Shaul resumed his teaching duties and continues to be employed as a teacher in the School District.
 
 
 7
 Plaintiff's cause of action arises from defendants' actions immediately following his suspension on January 15, 1999. In his suspension letter, Shaul was instructed to meet Superintendent Marzeski on January 19th to return school-owned property and remove his personal belongings from the assigned classroom that he had used since 1991. Upon the advice of a representative of the New York State United Teachers Union, Shaul chose not to attend this meeting. He did deliver the school property in his possession — including keys to the classroom — to a fellow teacher, who returned them to the School District.
 
 
 8
 On January 29th, Shaul returned to the school to collect his personal belongings. These items were scattered throughout the classroom in boxes, a desk, and three filing cabinets, one of which was locked. The room, as described by both Shaul and school administrators, was extremely cluttered and messy. He did not remove all of his belongings from the classroom in the hour-and-a-half he had before being asked to vacate the premises.
 
 
 9
 The following day, January 30th, Secondary Principal Strange and Elementary Principal Culbert began cleaning the classroom to prepare it for a new teacher who was to replace Shaul and use the same working space. School administrators, including Superintendent Marzeski, and custodians returned twice, on or around February 4th and 18th, to finish preparing the room. In the process of sorting through items left in the room, they drilled out the lock of one of the filing cabinets so that it could be accessed. A photo album containing pictures of the student involved in the 1990 incident was found in the room. At Shaul's disciplinary hearing, the school district attempted to introduce the photo album along with a car phone, personal correspondence, a notebook, and various photographs. The hearing officer refused to enter these items into evidence.
 
 
 10
 On February 19th, Shaul came to the school to retrieve personal items that had been found in his former classroom. He claims that a number of items belonging to him were never returned, including two laser pens, several books, personal letters, and various teaching materials, including tests, quizzes, and homework problems.
 
 
 11
 Shaul filed suit in federal district court against defendants, alleging violation of his Fourth Amendment rights with the illegal search and seizure of the items in the classroom. Shaul also sought punitive damages against the individual defendants. In addition, Shaul claimed that the School District showed deliberate indifference to his constitutional rights in its attempt to introduce as evidence in his disciplinary hearing the personal items found in the classroom. The United States District Court for the Northern District of New York (Hurd, J.) found that there was no genuine issue for trial on plaintiff's illegal search and seizure claims and dismissed plaintiff's complaint in its entirety. Plaintiff appeals.
 
 DISCUSSION
 
 12
 This Court has jurisdiction to hear this appeal under 28 U.S.C. § 1291. This Court reviews the district court's grant of summary judgment for defendants de novo. Leventhal v. Knapek, 266 F.3d 64, 71 (2d Cir.2001). Summary judgment is appropriate where "`there is no genuine issue as to any material fact ... the moving party is entitled to a judgment as a matter of law,' Fed.R.Civ.P. 56(c), and therefore, `the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.' Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)." Id. We conclude that this is such a case.
 
 
 13
 I. Plaintiff's Claim of Unreasonable Search and Seizure on January 30, 1999
 
 
 14
 The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. CONST.amend. IV. Shaul alleges that on January 30, 1999, defendants unreasonably searched his former classroom and seized personal property.
 
 
 15
 A. Plaintiff's Reasonable Expectation of Privacy
 
 
 16
 To prove an illegal search claim, a party must demonstrate (1) that he had an expectation of privacy that society is prepared to consider reasonable and (2) that he had acted in a way with respect to the property in question that indicated a subjective expectation of privacy. United States v. Perea, 986 F.2d 633, 639 (2d Cir.1993). In O'Connor v. Ortega, the Supreme Court recognized that public employees frequently have "substantial" privacy expectations in private property maintained at their workplaces. 480 U.S. 709, 721, 107 S.Ct. 1492, 94 L.Ed.2d 714 (O'Connor, J., plurality opinion); see id. at 730, 107 S.Ct. 1492 (Scalia, J., concurring in the judgment); id. at 737, 107 S.Ct. 1492 (Blackmun, J., dissenting). At the same time, however, the Court acknowledged that "[t]he operational realities of the workplace ... may make some employees' expectations of privacy unreasonable when an intrusion is by a supervisor rather than a law enforcement official." Id. at 717, 107 S.Ct. 1492 (plurality opinion) (emphasis in original); see also id. at 737, 107 S.Ct. 1492 (Blackmun, J., dissenting). As the plurality observed, some workplaces "are continually entered by fellow employees and other visitors during the workday for conferences, consultations, and other work-related visits," under which circumstances "no expectation of privacy is reasonable." Id. at 718, 107 S.Ct. 1492; accord Leventhal, 266 F.3d at 73; see also Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) ("What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); United States v. Buettner-Janusch, 646 F.2d 759, 766 (2d Cir. 1981) (holding that a professor has no reasonable expectation of privacy in enclosed areas of a university lab that are shared with another professor and a student research assistant).
 
 
 17
 As the district court observed, many persons — "students, colleagues, custodians, administrators, parents, and substitute teachers" — had access to Shaul's classroom, Shaul, 218 F.Supp.2d at 270, and Shaul himself acknowledges that his personal possessions were largely commingled with school materials in a haphazard fashion throughout the room. Brief of Appellant at 8. But nothing in the record on appeal indicates that school administrators, custodians, parents, or students routinely looked through these materials or through Shaul's desk or file cabinets, particularly not his locked file cabinet, for which it appears he had the only key. Apparently, fellow teachers may have sought necessary supplies and instructional materials when using the classroom, but such occasional access, by itself, does not lead to a conclusion as a matter of law that a teacher in good standing retains absolutely no privacy interest in the desk and files in his classroom. See Leventhal, 266 F.3d at 74 (holding that co-workers' occasional retrieval of documents from plaintiff's computer did not extinguish a reasonable expectation of privacy in the contents of the machine; employer searches must be frequent and extensive or employer must have a stated policy notifying employee that he can have no privacy expectation). As this Circuit has noted in Leventhal, the "`[c]onstitutional protection against unreasonable searches by the government does not disappear merely because the government has the right to make reasonable intrusions in its capacity as employer.'" Id. (quoting O'Connor, 480 U.S. at 717-18, 107 S.Ct. 1492 (plurality opinion quoting concurring opinion of Scalia, J.)).
 
 
 18
 Whatever reasonable expectation of privacy Shaul may have had in his classroom while he was a teacher in good standing, we nevertheless agree with the district court that he had no such expectation on January 30, 1999, by which date Shaul had (1) been suspended from teaching and barred from his classroom, (2) surrendered the key to the classroom's locked file cabinet at the same time that he declined to retrieve his personal property from the classroom, and (3) been afforded a second opportunity to spend an hour and a half removing personal items from the classroom.
 
 
 19
 Certainly, the discharge or suspension of an employee greatly reduces — if not eliminates — his reasonable expectation of privacy in his former workplace. This conclusion is particularly warranted on the facts of this case where on January 19, 1999, Shaul was asked to surrender any school keys in his possession at the same time that he was given the opportunity to remove any personal belongings from his classroom. Taken together, the demand and the invitation served as constructive notice that Shaul could have no reasonable expectation of privacy in anything that he did not remove from his former classroom after that date. Cf. Leventhal, 266 F.3d at 74 (noting that employee had been given no notice that he had no reasonable expectation of privacy in the contents of his office computer). By deliberately declining to retrieve his belongings on January 19th, while at the same time surrendering the key to his locked file cabinet, Shaul relinquished whatever expectation of privacy he formerly had in the materials contained in the classroom, including those in the locked file cabinet. See generally United States v. Jimenez, 789 F.2d 167, 170 (2d Cir.1986) (holding that defendant who relinquished key to apartment upon termination of each use had no reasonable expectation of privacy and hence no Fourth Amendment seizure claim); United States v. Blanco, 844 F.2d 344, 349 (6th Cir.1988) (holding that renter who gives up his only set of keys without taking any steps to maintain control thereby gives up expectation of privacy in premises).
 
 
 20
 B. The Reasonableness of the January 30, 1999 Search and Seizure
 
 
 21
 Despite Shaul's failure to retrieve his belongings on January 19, 1999, defendants afforded him a second opportunity. Shaul now asserts that the hour and a half afforded him on January 29th was insufficient for this task, that his expectation of privacy continued until full retrieval was made, and, therefore, that defendants removal of his belongings from the classroom on January 30, 1999 was an unreasonable search and seizure. We disagree.
 
 
 22
 Preliminarily, we observe that Shaul's insufficient time claim, even when viewed in the light most favorable to him, is unconvincing. Notably, Shaul makes no claim that he attempted on January 29th to retrieve any personal effects from the locked file cabinet, wherein he presumably had the greatest expectation of privacy. Neither does he claim that he could not empty the contents of his desk — the room's next most private area — into a box or bag within the allotted time. To the extent there was a problem with timely removal, it stemmed largely from the fact that Shaul had made little attempt to maintain privacy of large quantities of his personal materials, intermingling sports memorabilia, yearbooks, and personal correspondence throughout the classroom with school property. Brief of Appellant at 6.
 
 
 23
 Even if we were to assume that Shaul had a reasonable expectation of privacy that continued after January 29, 1999, Shaul would not be entitled to reversal of the district court judgment because by January 30th, it was certainly reasonable for defendants themselves to remove Shaul's personal belongings from the classroom.
 
 
 24
 As the Supreme Court has recognized, government offices are not provided to employees for the maintenance of personal effects. They are provided "for the sole purpose of facilitating the work of an agency." O'Connor, 480 U.S. at 725, 107 S.Ct. 1492. Thus, the government interest in "the efficient and proper operation of the workplace" will often require intrusions on employee privacy. Id. at 723, 107 S.Ct. 1492. Such intrusions, whether "for noninvestigatory, work-related purposes," or "for investigations of work-related misconduct" do not require either a warrant or probable cause; rather, their constitutionality is "judged by the standard of reasonableness under all the circumstances." Id. at 725-26, 107 S.Ct. 1492 (plurality opinion); see id. at 732, 107 S.Ct. 1492 (Scalia, J., concurring in the judgment).
 
 
 25
 The reasonableness standard must be satisfied both at the inception of an employer's intrusion and throughout its scope. The first requirement is satisfied if "there are reasonable grounds for suspecting that the search will turn up evidence that the employee is guilty of work-related misconduct or that the search is necessary for a noninvestigatory work-related purpose such as to retrieve a needed file." Id. at 726, 107 S.Ct. 1492 (plurality opinion); see Leventhal, 266 F.3d at 75. The second requirement is met when "`the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light ... the nature of the [misconduct].'" O'Connor, 480 U.S. at 726, 107 S.Ct. 1492 (quoting New Jersey v. T.L.O., 469 U.S. 325, 342, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985)).
 
 
 26
 In this case, there is no question that defendants' January 30th search of Shaul's former classroom and the removal of his personal belongings therefrom were reasonably necessary for a non-investigatory work-related purpose — that is, to clean and organize the classroom so that a new teacher could have the materials, equipment, and space necessary to assume Shaul's responsibilities for the remainder of the school year.
 
 
 27
 Shaul does not dispute this fact. Instead, he asserts that this avowed non-investigatory purpose was a subterfuge for defendants' real investigatory goal: the procurement of evidence of misconduct that could be used against him at his disciplinary hearing. To support this argument, Shaul observes that defendants unsuccessfully attempted to offer into evidence at the disciplinary hearing one item found while searching his locked file cabinet, i.e., a photograph of the former student whom he allegedly stalked. But even if we assume that defendants' search was motivated, at least in part, by an investigatory purpose, the search would not have been unreasonable. By January 30, 1999, defendants certainly possessed individualized suspicion that Shaul had recently engaged in professional misconduct. Id. (discussing "individualized suspicion" standard without holding it essential to a reasonable investigatory workplace search). Their challenged search was prompted by Shaul's suspension for alleged sexual harassment of a sophomore student in his homeroom class. Thus, it was entirely reasonable for defendants to think that evidence relating to Shaul's dealings with the student — which had included written correspondence — might be found in the classroom where much of their interaction had occurred.
 
 
 28
 In sum, we agree with the district court that defendants were entitled to summary judgment on Shaul's claim of unreasonable search and seizure of his property on January 30, 1999. Whatever reasonable expectations of privacy Shaul may have had in personal property maintained in his classroom while he was a teacher in good standing, that expectation ended when, after being suspended for professional misconduct and barred from his classroom, he surrendered all school keys, including a key to a locked file cabinet in his classroom, at the same time that he failed to avail himself of an opportunity to retrieve his personal belongings. To the extent Shaul complains that defendants did not give him enough time to remove all his belongings on a subsequent occasion, we hold that even if that were the case, by January 30th defendants had reasonable investigatory and non-investigatory grounds for searching the classroom and removing plaintiff's personal property so that a new teacher could complete the school year.
 
 
 29
 II. Illegal Seizure Claim and Defendants' Failure to Return All of Plaintiff's Personal Effects
 
 
 30
 Shaul alleges that defendants' failure to return certain items removed from his classroom — two laser pointers, athletic memorabilia, books, personal letters, mementos, tests, quizzes, and homework problems — constitute an unreasonable seizure separate and distinct from that occurring on January 30, 1999. The district court rejected this claim, concluding that Shaul had no possessory interest in these items.
 
 
 31
 Given Shaul's assertion that he protested being forced to leave the classroom on January 29, 1999, without retrieving all his belongings, we cannot agree that, as a matter of law, he lost all possessory interest in any personal effects removed by defendants the following day. Certainly, defendants do not suggest that they were entitled to retain Shaul's personal possessions removed from the classroom on January 30th. Indeed, they submit that numerous boxes of such items were returned to him on February 19th. They do, however, challenge Shaul's claim to a possessory interest in teaching materials, asserting that such items were prepared for and, therefore, owned solely by the School District.
 
 A. The Teaching Materials
 
 32
 Shaul argues that the tests, quizzes, and homework problems stored in the classroom — never returned to him and presumably discarded — were illegally seized by defendants in violation of his Fourth Amendment rights. A seizure occurs when there is some meaningful interference with an individual's possessory interest in that property. United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). The district court held that Shaul did not have a possessory interest in the teaching materials, thereby rejecting plaintiff's illegal seizure claim. We agree that Shaul had no possessory interest in teaching materials that he prepared in the course of his employment in his capacity as an employee of the School District. Thus, the School District's removal of such materials from a classroom after Shaul's suspension cannot be deemed an unreasonable seizure.
 
 
 33
 The Copyright Act of 1976 provides that copyright ownership "vests initially in the author or authors of the work." 17 U.S.C. § 201(a) (1996). The author of a given work is "the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Community For Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (citing 17 U.S.C. § 102). It is clear here — and is not contested by defendants — that Shaul is the creator of the teaching materials in question. The Act, however, contains an important exception for "work prepared by an employee within the scope of his or her employment." 17 U.S.C. § 101 (1996). Under this "work-for-hire" exception, "[t]he employer ... is considered the author ... and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all the rights comprised in the copyright." 17 U.S.C. § 201(b).
 
 
 34
 In the instant case, defendants argue that the work-for-hire exception applies since Shaul was employed by the School District and was required to prepare the teaching materials in his official duties as a teacher. Therefore, the School District should be considered the author and owner of the tests, quizzes, and homework problems prepared by Shaul.
 
 
 35
 Plaintiff concedes that he was an employee as defined under the work-for-hire exception, as found by the district court. In the absence of a written agreement stipulating otherwise, the key issue, therefore, is whether the materials in question were prepared "within the scope of employment." See Merkos L'Inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch, Inc. 312 F.3d 94, 98 (2d Cir.2002). Shaul offers a three-prong test, based on the common law of agency, for determining if an employee's conduct is within the scope of his employment: (1) It is of the kind of work he is employed to perform; (2) It occurs substantially within authorized work hours; (3) It is actuated, at least in part, by a purpose to serve the employer. Restatement (Second) of Agency § 228 (1958); see also Reid, 490 U.S. at 751-52, 109 S.Ct. 2166.
 
 
 36
 Shaul erroneously relies on City of Newark v. Beasley, 883 F.Supp. 3 (D.N.J.1995) to argue that his preparation of teaching materials falls outside the scope of his employment. It is clear that preparing materials for class was the kind of work that he was employed to perform as a teacher (satisfying the first prong) and that Shaul was motivated to spend the time to prepare materials for class in order to fulfill his duties as a teacher (satisfying the third prong), regardless of his purported desire to publish the materials. With respect to the second prong, the instant case is distinguishable from Beasley, in which a police officer deliberately worked on an educational program at home for the express purpose of retaining ownership of the materials. See id. at 6. Here, the very nature of a teacher's duties involves a substantial amount of time outside of class devoted to preparing lessons, problem sets, and quizzes and tests — which is clearly within the scope of his employment.
 
 
 37
 The plaintiff also seeks to invoke an "academic" exception to the work-for-hire doctrine. See Weinstein v. University of Illinois, 811 F.2d 1091 (7th Cir.1987). However, unlike the university employer in Weinstein, the School District in the instant case does not have a formal and written policy concerning work produced by teachers. Furthermore, the "academic tradition" granting authors ownership of their own scholarly work is not pertinent to teaching materials that were never explicitly prepared for publication by Shaul, as opposed to published articles by university professors. Cf. id. at 1094.
 
 
 38
 Without denigrating in any way the time and effort devoted by Shaul in fulfilling his teaching duties, we hold that his ownership of the tests, quizzes, homework problems, and other teaching materials in his former classroom is precluded by the work-for-hire doctrine. Because the teaching materials at issue were owned by the School District, it was free to entrust its employee Shaul with some degree of possession or to withdraw that possession in its entirety as it deemed in its best interest. Its decision to reclaim all possession after Shaul's suspension and not to return teaching materials to him cannot support a claim of unreasonable seizure.
 
 B. Missing Personal Belongings
 
 39
 Shaul does not dispute that on February 19, 1999, defendants returned to him boxes of personal items removed from his former classroom on January 30th. Rather, he complains that certain items were missing therefrom and that defendants' failure to return these items constitutes an unreasonable seizure of them.
 
 
 40
 Where, as in this case, an initial seizure of property was reasonable, defendants' failure to return the items does not, by itself, state a separate Fourth Amendment claim of unreasonable seizure. In United States v. Jakobetz, 955 F.2d 786, 802 (2d Cir.1992), in which a defendant sought to suppress lawfully procured photographs that law enforcement authorities had retained beyond the time permitted by state law, this Circuit concluded that a seizure claim based on the unlawful retention was too "novel" a theory to warrant Fourth Amendment protection. See also Lee v. City of Chicago, 330 F.3d 456, 461-65 (7th Cir.2003) (holding that where property was lawfully seized by government, plaintiff could not bring a Fourth Amendment unreasonable seizure claim to challenge the conditions imposed on the property's return, although other legal remedies for return might be available); Fox v. Van Oosterum, 176 F.3d 342, 349-52 (6th Cir.1999) (holding that an unreasonable refusal to return property does not state a Fourth Amendment seizure claim where the original taking was lawful). To the extent the Constitution affords Shaul any right with respect to a government agency's retention of lawfully seized property, it would appear to be procedural due process. See e.g., United States v. David, 131 F.3d 55, 59 (2d Cir. 1997) (entertaining due process challenge to government delay in forfeiting or returning seized property). But Shaul does not pursue such a claim and, indeed, could not because he has failed to adduce any evidence that the government's inability to return his property was due to anything other than negligent maintenance. It is well established that mere negligence is insufficient as a matter of law to state a due process violation. See Poe v. Leonard, 282 F.3d 123, 145 (2d Cir.2002); see also Davidson v. Cannon, 474 U.S. 344, 347-48, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). Accordingly, we agree with the district court that summary judgment was properly entered in favor of defendants on Shaul's claim of a second unreasonable seizure.
 
 CONCLUSION
 
 41
 For the aforementioned reasons, the district court's grant of summary judgment for defendants and dismissal of plaintiff's complaint is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Richard W. Goldberg, Judge, United States Court of International Trade, sitting by designation