FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 23, 2025

CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JAUARY 23, 2025

SARAH R. PENDLETON
ACTING SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JEREMY DAVID and MARK SPRINGER, Individually and on behalf of all others similarly situated, | ) ) ) ) | No. 102566-1 |
| Petitioners, | ) ) | |
| v. | ) | EN BANC |
| FREEDOM VANS LLC a Washington limited liability company; and DOES 1-10, | ) ) ) ) ) | |
| Respondents. | ) ) ) | Filed: January 23, 2025 |

MONTOYA-LEWIS, J.—In Washington, employers who pay their employees less than twice the minimum wage cannot prohibit them from working second jobs, subject to a few, limited exceptions. RCW 49.62.070. This statute recognizes the importance of workforce mobility and places certain limits on what an employer can require of its employees. *E.g.*, RCW 49.62.005. Our legislature has recognized that some workers must have multiple jobs to earn a living wage, and a worker's original employer should not have complete control over whether they

accept an additional job with another employer. RCW 49.62.070.

Employers and employees have reasonable expectations of one another. Employees work for employers with expectations of being paid, and employers hire employees with expectations that those employees do not act in ways that would affirmatively detract from the employer's business. This is part of the common law duty of loyalty. Employers may impose restrictions consistent with the common law duty of loyalty, but the legislature requires this duty to be narrowly construed. RCW 49.62.070(2)(b), .005(3). Here, an employer required its employees to sign a noncompete agreement restricting them from directly or indirectly engaging in any business that competed with the employer company. This case requires us to clarify the scope and application of the statute as it relates to this noncompete agreement.

The legislature expressly directed that we liberally construe protections for employees and narrowly confine the exception for the common law duty of loyalty in order to effectuate its intent to (1) safeguard low wage workers from unfair restrictions on additional employment in noncompete agreements and (2) promote workforce mobility. RCW 49.62.110, .005. Given the clear, stated intent of the legislature and its direction as to how courts should interpret this statute, we reverse the Court of Appeals.

We hold that the kinds of competition prohibited must be narrow in the context of chapter 49.62 RCW and noncompete agreements must be reasonable.

Employers may impose prohibitions that are consistent with the duty of loyalty only when those prohibitions are reasonable in light of the facts and specific provisions within the noncompete agreement and are consistent with the legislature's directive that the duty of loyalty be narrowly construed. We remand to the superior court for further proceedings as to the reasonableness of the noncompete agreement and an assessment of damages and attorney fees.

FACTS AND PROCEDURAL HISTORY

A.     Factual Background

Freedom Vans LLC is a company that converts and customizes vans into mobile houses.

Freedom Vans hired a self-taught carpenter, Jeremy David, as a shop assistant in 2019; he was responsible for installing paneling, insulation, flooring, windows, fixtures, and related components, as well as maintaining the parts room. David was later promoted to a foundations manager, where he was responsible for managing the construction and installation of those components and electrical prewiring.

Freedom Vans also hired an automotive and maritime mechanic, Mark Springer, as an electrician in 2020; he was responsible for installing auxiliary battery systems and lighting, solar power systems, ventilation fans, and other electrical components.

Neither David nor Springer ever made more than twice the minimum wage

3

while working for Freedom Vans. Nor did they receive any training or guidance as to how to perform their job duties; they relied on their prior experience and publicly available resources.

Freedom Vans required all employees to sign a noncompete agreement prohibiting employees from "directly or indirectly engag[ing] in any business that competes" with Freedom Vans during their employment. 1 Clerk's Papers (CP) at 22, 26, 52, 75. The agreement defined "direct or indirect competition" as including, but not limited to, "engaging in a business as owner, partner, or agent" or "becoming an employee of any third party that is engaged" in a "competitive business." *Id.* at 26. David and Springer signed the agreement out of concern for their jobs.

David and Springer claimed they declined offers to take on additional work building or repairing vehicles after signing the agreement because they were worried that if they accepted these side jobs, Freedom Vans would terminate their employment and potentially pursue legal action. David and Springer stopped working for Freedom Vans in 2021.

B.    Procedural History

David and Springer, individually and on behalf of a class of similarly situated individuals, filed a class action lawsuit against Freedom Vans in 2022, alleging the noncompete agreement violated chapter 49.62 RCW—a statute that regulates noncompete clauses in employment contracts. They sought damages and injunctive

and declaratory relief. Freedom Vans filed a motion for summary judgment, arguing that the noncompete agreement was permissible under the statute and asking the court to award attorney fees.

The superior court granted summary judgment to Freedom Vans but denied the request for attorney fees. The court reasoned that "RCW 49.62 does not restrict an employer's right to require employee loyalty and avoidance of conflicts of interest during the course of employment consistent with the common law" in an express or implied manner. 1 CP at 131 (emphasis omitted) (citing RCW 49.62.070(2)(b)). The court subsequently denied David and Springer's motion for reconsideration of the order granting summary judgment and Freedom Vans' motion for reconsideration on the court's ruling of attorney fees. Both parties appealed.

The Court of Appeals, in an unpublished decision, affirmed on both issues. *David v. Freedom Vans LLC*, No. 84867-4-I, slip op. at 1-2 (Wash. Ct. App. Oct. 16, 2023) (unpublished).[1] The court held that RCW 49.62.070(2)(b) allows an employer to restrict its employees' outside employment as long as the restrictions comply with existing law, including the common law duty of loyalty and corresponding policies that further those legal obligations. *Id.* at 10. In doing so, the court provided an alternate basis for its holding, which was not briefed by the parties, explaining that even if the noncompete agreement is a policy that is broader

---

[1] https://www.courts.wa.gov/opinions/pdf/848674.pdf

than the common law duty, the policy advances the same objective as the duty by restricting employees from competing with their original employer "in any capacity." *Id.* at 10-11.

We granted review. The Washington Employment Lawyers Association filed an amicus brief asking this court to reverse the Court of Appeals, remand to the superior court for further consideration, and instruct the superior court to interpret chapter 49.62 RCW's protections liberally and exceptions to worker mobility narrowly.

## ANALYSIS

We review the grant of a motion for summary judgment de novo. *Benjamin v. Wash. State Bar Ass'n*, 138 Wn.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). All evidence must be viewed in the light most favorable to the nonmoving party. *Clements v. Travelers Indem. Co.*, 121 Wn.2d 243, 249, 850 P.2d 1298 (1993).

The scope and application of RCW 49.62.070 is an issue of statutory interpretation, which is a question of law we also review de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). In interpreting statutes, our "objective is to ascertain and carry out the Legislature's intent." *Id.* We discern the plain meaning of a statute by considering the language of the statute and

related statutes. *Id.* at 11. If the statute is ambiguous, we then refer to legislative history and other aids to construction. *Id.* at 12. If the plain meaning cannot be determined from the statutory provision at issue, the court considers the statutory scheme as a whole and related statutes. *Id.* at 10. It is also well established that "'[t]he drafters of legislation . . . are presumed to have used no superfluous words and we must accord meaning, if possible, to every word in a statute.'" *In re Recall of Pearsall-Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000) (alterations in original) (quoting *Greenwood v. Dep't of Motor Vehicles*, 13 Wn. App. 624, 628, 536 P.2d 644 (1975)).

The legislature enacted chapter 49.62 RCW in 2019 to promote workforce mobility and safeguard employees from unfair practices. RCW 49.62.005. The legislature expressly provided that "[t]he provisions in this chapter *facilitating workforce mobility and protecting employees and independent contractors need to be liberally construed* and *exceptions narrowly construed.*" RCW 49.62.005(3) (emphasis added); *see also* RCW 49.62.110 ("This chapter is an exercise of the state's police power and shall be construed liberally for the accomplishment of its purposes."). In enacting chapter 49.62 RCW, the legislature found that noncompete agreements that limit competition or hiring may be unreasonable. RCW 49.62.005(2).

At issue in this case is the statute's provision that governs an employer's

7

authority to restrict low wage workers from obtaining additional employment.

RCW 49.62.070. "[A]n employer may not restrict, restrain, or prohibit an employee

earning less than twice the applicable state minimum hourly wage[2] from having an

additional job, supplementing their income by working for another employer,

working as an independent contractor, or being self-employed." RCW 49.62.070(1).

As this provision protects employees and facilitates workforce mobility, it must be

liberally construed. RCW 49.62.005(3).[3]

However, the statute contains an exception: "[t]his section does not alter the

---

[2] In 2025, the minimum wage in Washington is $16.66 per hour. *History of Washington State's Minimum Wage*, WASH. STATE DEP'T. OF LAB. & INDUS., https://lni.wa.gov/workers-rights/wages/minimum-wage/history-of-washington-states-minimum-wage#:%7E:text=In%202024%2C%20the%20minimum%20wage,based%20on%20the%20CPI%2DW. Thus, RCW 49.62.070 applies to workers currently making less than $33.32 per hour, or, working 40 hours per week at that rate, earning $69,305.60 per year. For instance, this statute protects people who work as custodians, landscapers, morticians, barbers, group fitness instructors, childcare workers, retail salespersons, travel agents, human resource assistants, postal service mail carriers, and farmworkers, among others. *Occupational Employment and Wage Statistics* (2023), U.S. BUREAU OF LAB. STAT., https://www.bls.gov/oes/current/oes_wa.htm. This nonexhaustive list demonstrates the broad scope of workers this statute is intended to protect.

[3] The public testimony for Engrossed Substitute House Bill 1450, which was enacted as chapter 49.62 RCW, also demonstrates that the legislature intended for the statute governing noncompete agreements to broadly protect low wage workers by allowing them to secure supplemental employment within their industry. ENGROSSED SUBSTITUTE H.B. 1450, 66th Leg., Reg. Sess. (Wash. 2019); *see also Wash. Bankers Ass'n v. Dep't of Revenue*, 198 Wn.2d 418, 445, 495 P.3d 808 (2021) ("While 'the views of a sponsor of legislation are by no means conclusive, they are entitled to considerable weight.'" (quoting *Carlin Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 749 F.2d 113, 116 n.7 (2d Cir. 1984), and citing *Wash. State Legislature v. Lowry*, 131 Wn.2d 309, 326, 931 P.2d 885 (1997))). For instance, primary bill sponsor Representative Derek Stanford testified that noncompete agreements "take [employees'] decisions about their career away from them . . . [and] the tremendous burden placed on individual workers and on our state's economy of taking away that right to take a new job is unfair, unnecessary, and completely contrary to competition in a free market." H. Floor Debate on Substitute H.B. 1450, 66th Leg., Reg. Sess. (Mar. 12, 2019), at 1 hr., 5 min., 57 sec., through 1 hr., 7 min., 28 sec., *video recording by* TVW, Washington State Public Affairs Network, https://tvw.org/video/house-floor-debate-march-12-2019031103/?eventID=2019031103.

obligations of an employee to an employer under existing law, including the common law duty of loyalty and laws preventing conflicts of interest and any corresponding policies addressing such obligations." RCW 49.62.070(2)(b). As an exception to the rule that employers may not prohibit employees from having additional jobs, this provision must be narrowly construed. RCW 49.62.005(3). Thus, noncompete agreements are presumptively invalid for low wage workers under RCW 49.62.070(1) and only narrow exceptions apply.

This is a case of first impression. There is no published case law providing guidance on chapter 49.62 RCW or how it relates to the common law duty of loyalty or the scope of that duty, as the statute was enacted fairly recently, in 2019. *Kieburtz & Associates, Inc. v. Rehn* is a foundational case in Washington regarding an employee's common law duty of loyalty as it relates to noncompete agreements more broadly. 68 Wn. App. 260, 842 P.2d 985 (1992). There, two employees were shareholders of the company, and, during the course of their employment, they set up a separate partnership in direct competition with the employer and agreed to provide services for one of the employer's clients. *Id.* at 262-63. The employer sued, in part, for a violation of the employees' duty of loyalty to the corporation. *Id.* at 263-64. The Court of Appeals held that the employees' actions violated a duty of loyalty to their employer not to compete, reasoning that during the course of employment, "an employee is not 'entitled to solicit customers for [a] rival

9

business . . .' or to act in direct competition" with the employer's business.
*Id.* at 265 (alterations in original) (quoting RESTATEMENT (SECOND) OF AGENCY
§ 393 cmt. e (AM. L. INST. 1958)).  In doing so, the court relied on the description
of the duty of loyalty set forth in *Restatement (Second) of Agency* § 393 that
"'[u]nless otherwise agreed, an agent is subject to a duty not to compete with the
principal concerning the subject matter of [their] agency.'"  *Id.* (first alteration in
original); *see also Evergreen Moneysource Mortg. Co. v. Shannon*, 167 Wn. App.
242, 251, 274 P.3d 375 (2012) (stating that *Kieburtz* established the rule that while
employed, an employee has a duty to avoid soliciting customers for rival business
or to directly compete with the employer's business (citing *Kieburtz*, 68 Wn. App.
at 265)).

Though *Kieburtz* describes the common law duty of loyalty in relation to
noncompete agreements generally, the case does not interpret the duty of loyalty
within the context of chapter 49.62 RCW and is therefore inapplicable.  In fact, that
Court of Appeals case was published almost three decades before the legislature
enacted chapter 49.62 RCW.  LAWS OF 2019, ch. 299, §§ 1, 8.  Though Freedom
Vans relies on this case, we find it unhelpful in interpreting this statute.

David and Springer acknowledge that *Kieburtz* and *Restatement (Second) of
Agency* § 393 establish the common law duty of loyalty, which prohibits acting in
*direct* competition with their original employer.  Suppl. Br. of Pet'rs at 4, 9, 14.

10

They define "direct competition" as soliciting customers for a rival business or accepting an additional job where the employee would engage in the same job duties as they do with their original employer. *Id.* at 9. However, David and Springer seem to argue that the duty of loyalty permits "*indirect* competition", which they define as working for another employer doing job duties unrelated to the employee's job duties with the original employer. *Id.* at 22. They contend that Freedom Vans' noncompete agreement prohibiting both direct *and* indirect competition is therefore unenforceable. *Id.* But there is no authority that defines indirect competition, and such a distinction between direct and indirect competition under this statute is unnecessary and has no place in our analysis.

Freedom Vans, on the other hand, argues the duty of loyalty extends to "*all kinds of assistance* to an employer's competitors, without drawing a distinction between direct and indirect competition." Br. of Resp'ts/Cross-Appellants at 10 (Wash. Ct. App. No. 84867-4-I (2023)) (emphasis added). In other words, Freedom Vans contends that current employees should not be able to provide any kind of assistance to another Washington company specializing in convertible vans, regardless of job duties. *Id.* In doing so, Freedom Vans relies on *Restatement (Second) of Agency* § 394 and *Restatement (Third) of Agency* § 8.04. *Id.* at 9-10 (quoting RESTATEMENT (SECOND) OF AGENCY § 394 cmt. a ("an agent has a duty not to act for a competitor of his principal unless this is permitted by the understanding

11

of the parties"); RESTATEMENT (THIRD) OF AGENCY § 8.04 (AM. L. INST. 2006) ("an agent has a duty to refrain from competing with the principal and from taking action on behalf of or otherwise assisting the principal's competitors")). We decline to adopt this expansive view of the duty of loyalty, as it would render the employee protections in chapter 49.62 RCW meaningless and would require us to ignore the directive in the statute itself that the exceptions be construed narrowly.

The legislature directed that these employee protections be construed broadly and exceptions narrowly, in order to effectuate its intent to protect low wage workers from unreasonable restrictions on additional employment. RCW 49.62.005, .110. Prohibiting employees from engaging in "all kinds of assistance" with a competitor would be contrary to the legislature's intent to protect low wage workers by allowing them to earn a supplemental income to support themselves and their families and would unreasonably broaden the duty of loyalty. RCW 49.62.070; *see also N. Am. Paper Co. v. Unterberger*, 172 Ill. App. 3d 410, 413, 526 N.E.2d 621, 122 Ill. Dec. 362 (1988) (prohibition on associating with any competitor in any capacity is overly broad as a matter of law); *Telxon Corp. v. Hoffman*, 720 F. Supp. 657, 664-65 n.7 (N.D. Ill. 1989) (agreements restricting ability to work for competitors without regard to capacity "have repeatedly been declared contrary to law"). A narrow construction of the common law exception is also consistent with the economic realities animating the legislature's objective to facilitate workforce mobility, as

12

many low wage workers must work multiple jobs to provide for themselves and their families. RCW 49.62.005; *see, e.g.*, Jo Constantz, *Inflation Forces over Half of Americans To Consider Second Jobs*, SEATTLE TIMES (Nov. 3, 2022, 6:00 AM)[4] (about 38 percent of workers have looked for a second job and an additional 14 percent have plans to do so); Megan Cerullo, *More American Workers Are Taking on Second Jobs as Inflation Rages*, CBS NEWS (July 21, 2022, 11:43 AM)[5] (more Americans than ever have two full-time jobs to support themselves). We therefore reverse the Court of Appeals and hold that barring employees from providing *any* kind of assistance to competitors exceeds a narrow construction of the duty of loyalty, contrary to the legislature's intent to protect low wage employees.

This does not, as Freedom Vans argues, eliminate the common law duty of loyalty. While the statute provides that noncompete agreements are subject to existing law including the common law, RCW 49.62.070(2)(b), the common law provides that noncompete agreements are subject to a reasonableness standard. *See, e.g.*, *Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 833, 100 P.3d 791 (2004) ("Courts enforce noncompete agreements that . . . are reasonable." (citing *Racine v. Bender*, 141 Wash. 606, 615, 252 P. 115 (1927))); *Emerick v. Cardiac Study Ctr., Inc., PS*, 189 Wn. App. 711, 721, 357 P.3d 696 (2015) ("[N]oncompete covenants

---

[4] https://www.seattletimes.com/explore/careers/inflation-forces-over-half-of-americans-to-consider-second-jobs/
[5] https://www.cbsnews.com/news/inflation-american-workers-are-taking-on-second-jobs/

are enforceable if they are reasonable."). We interpret reasonableness in the context of this statute and its clearly stated intent. In other words, the kinds of competition prohibited must be narrow in the context of chapter 49.62 RCW and noncompete agreements must be reasonable. Employers may impose some prohibitions short of that standard that are consistent with the duty of loyalty. Those prohibitions must be reasonable in light of the facts and specific provisions within the noncompete agreement, and must be consistent with the legislature's stated requirement that the duty of loyalty is to be narrowly construed.

Reasonableness is decided on a case-by-case basis. In assessing reasonableness, courts consider factors such as whether there is a need to protect the employer's business or goodwill, whether the restraint on the employee is reasonably necessary, and whether enforcing the noncompete agreement violates public policy. *Emerick*, 189 Wn. App. at 721-22. We remand to the superior court to determine whether Freedom Vans' noncompete agreement is reasonable under the facts of this case and is therefore enforceable under RCW 49.62.070.[6] We also remand to the superior court for an assessment of any applicable damages and attorney fees and costs.

---

[6] The superior court may engage in further fact-finding if necessary.

CONCLUSION

In sum, we interpret RCW 49.62.070 to broadly protect employees who earn less than twice the state minimum wage from unreasonable restrictions on obtaining supplemental employment and to narrowly permit employers to impose restrictions consistent with the common law duty of loyalty. RCW 49.62.005, .110. Accordingly, we reverse the Court of Appeals and conclude that restricting employees from providing all kinds of assistance to competitors would subsume the legislature's intent to protect low wage employees and exceeds a narrow construction of the duty of loyalty. We remand to the superior court for further proceedings, including the issue of whether Freedom Vans' noncompete agreement is reasonable and enforceable under RCW 49.62.070 and a determination of damages and attorney fees and costs.

_____
Montoya-Lewis, J.

WE CONCUR:

_____        _____
Stephens, C.J.                                     Gordon McCloud, J.

_____        _____
Johnson, J.                                        Yu, J.

_____        _____

_____        _____
González, J.

16

No. 102566-1

WHITENER, J. (concurring)—In this case we are asked to clarify the scope

and application of RCW 49.62.070 and whether the noncompete agreement violates

the statute. I agree with the result reached by the majority, but I write separately

because even though the issue is one of first impression, our precedent adequately

addresses this subset of low-wage earners. The legislature enacted chapter 49.62

RCW to specifically empower low-wage earners and to facilitate workplace

mobility. The legislature intended that low-wage earners be protected from policies

and procedures that would prevent this specific category of workers from

supplementing their wages. The legislature was clear in its summary of ESHB

1450.[1] The bill "[p]rohibits employers from restricting *certain* employees [low wage

earners] from having other jobs or work, with *limited* exceptions." S.B. REP. ON

ESHB 1450 (emphasis added). The legislature required that the statute's provisions

be "liberally construed and exceptions narrowly construed" so that low-wage earners

can be protected from unreasonable restrictions effectuated by noncompete

agreements. RCW 49.62.005(3).

Freedom Vans LLC required that all of its current employees sign its "Non-

Compete Agreement" as a condition of continued employment. 1 Clerk's Papers

---

[1] ENGROSSED SUBSTITUTE H.B. 1450, 66th Leg., Reg. Sess. (Wash. 2019).

1

(CP) at 22, 26, 52, 75. The agreement prohibited employees from "directly or indirectly engag[ing] in any business that competes" with Freedom Vans. *Id*. at 26. The definition of "direct and indirect competition" was broad. It included, but was not limited to an employee "engaging in a business as owner, partner, or agent" or "becoming an employee of any third party that is engaged" in a "competitive business." *Id.* Neither David, a carpenter, nor Springer, an electrician, ever made more than twice the minimum wage while working for Freedom Vans. *Id*. at 42, 43. They received no training or guidance on how to perform their job duties and relied on their prior experiences and publicly available resources to do their job. *Id*. at 43, 51, 75. In essence, the noncompete agreement prevented David and Springer from not only using the skills they acquired prior to working at Freedom Vans but it also prevented them from accepting offers from family members, friends, and people who may not have ever been or planned to be customers of Freedom Vans. *Id*. at 53, 76.

The Court of Appeals held that Freedom Vans' non-compete agreement was a valid restriction despite the employees being paid less than what is required under RCW 49.62.070(1). *David v. Freedom Vans LLC*, No. 84867-4, slip op. at 11 (Wash. Ct. App. Oct. 16, 2023) (unpublished).[2] The court reasoned that the duty of loyalty

---

[2] https://www.courts.wa.gov/opinions/pdf/848674.pdf

requires the employee to not compete in the "principal's direct commercial area" and a violation of that duty is not dependent on the employee's duties as outlined in the job description. *Id.* at 9. This interpretation meant that an employer could ignore the provisions of chapter 49.62 RCW and implement a sweeping noncompete policy for their low-wage employees.

I agree with the majority that the intersection between chapter 49.62 RCW and the common law duty of loyalty as it relates to noncompetition agreements appears to be an issue of first impression. Majority at 9. However, the majority finds *Kieburtz* to be inapplicable to interpreting the duty of loyalty within the context of chapter 49.62 RCW. *Id.* at 10; *Kieburtz & Assocs., Inc. v. Rehn*, 68 Wn. App. 260, 842 P.2d 985 (1992). *Kieburtz* is applicable to the extent that it defines the contours of the relationship between the common law duty of loyalty and noncompetition agreements, and frames the prohibited acts: (i) employees soliciting their employer's customers for a competitor's business and (ii) employees directly competing with their employer's business. 68 Wn. App. at 265-266. *Kieburtz*'s progeny reinforce that position and, while none of these cases or any that follow mention or define "indirect" competition, they hold out examples of what constitutes "direct" competition.[3] It is reasonable to infer that employee acts that do not explicitly target

---

[3] *See, e.g.*, *Keystone Fruit Mktg., Inc. v. Brownfield*, CV-05-5087-RHW, 2008 WL 1971412 (E.D. Wash. May 5, 2008) (court order) (holding that the defendant, Brownfield, breached the employee duty of loyalty by helping to

the business and/or its customers or undermine its operations (i.e. direct competitive acts) are allowed. Therefore, indirect actions of a low-wage earner employee, moonlighting even for a competitor business, to supplement their wages would likely comply with RCW 49.62.070(2)(b) because those employees would still be required to meet the obligations under existing law, including *Kieburtz*.

In this case, *Kieburtz* is illustrative though distinguishable on the duty of loyalty within the context of chapter 49.62 RCW. Rehn and Skorkein were employees turned shareholders of the business. *Id*. at 262. They, unlike low-wage earners, are unlikely to seek additional employment and are not the low-wage earners that chapter 49.62 RCW seeks to protect. Similarly, the Court of Appeals' example of the Pepsi marketing executive moonlighting as an executive for Coca Cola did not involve a low-wage earner that chapter 49.62 RCW protects. *David,* slip op. at 11. The difference in access to clients or business information is an important criterion in determining the outer limits of "direct competition" with the employer. In those cases, the parties hold positions of power and influence within the corporation that provides them access to clients and information that in direct

---

create a competing company while still employed by Keystone); *Barrett Bus. Servs., Inc. v. Colmenero*, 1:22-CV-3122-TOR, 2023 WL 8935046 (E.D. Wash. Dec. 27, 2023) (court order) (holding that the defendants, Colmenero and Alejo, breached the duty of employee loyalty when they hired two of Barrett Business Services Inc.'s (BBSI) employees to work for their competing company while still employed by BBSI).

competition could be harmful to the corporation. The same is unlikely of a low-wage earning position.

The Court of Appeals holding appears to incorrectly extend *Kieburtz* (and its reliance on *Restatement (Second) of Agency* § 393 comment e (Am. L. Inst. 1958)) when referring to *Restatement (Second) of Agency* § 394 and *Restatement (Third) of Agency* § 8.04 (Am. L. Inst. 2006). *Id.* at 9. While Restatements § 393, § 394 and § 8.04 differ slightly in focus, they are the same in that they predate chapter 49.62 RCW's 2019 publication and provide no specific carve out for low-wage earners. Restatements § 394 and § 8.04 also contain language that is either inapplicable to or may be harmful if applied to low-wage earners.

Under Restatement § 394 comment a, an agent breaches a duty when "acting for another in an undertaking which has a *substantial* tendency to cause him to disregard his duty to serve his principal with only his principal's purposes in mind." (Emphasis added.) It is unlikely that the type of conflict of interest suggested by this language would apply to a low-wage earning position. Additionally, Restatement § 8.04 is counter to chapter 49.62 RCW in its requirement that "[t]hroughout the duration of an agency relationship, an agent has a duty to refrain from … taking action on behalf of or *otherwise assisting the principal's competitors*." (Emphasis

added.) This language suggests that any job with a competitor would be a breach of the duty of employee loyalty.

The Court of Appeals' approach would allow employers to ignore the provisions of chapter 49.62 RCW and to restrict their low-wage employees in ways unforeseen by *Kieburtz*. This means a cashier at one fast-food establishment could not simultaneously be employed as a cashier at another fast-food establishment. This reasoning undermines the legislative mandate to construe the exceptions broadly and would prevent the very mobility the legislature sees as critical to supporting low-wage earners. It would, "unreasonably broaden the duty of loyalty" and do so while protecting the employer at the employee's expense.  Majority at 12. This would be an absurd result. *See Seattle Hous. Auth. v. City of Seattle*, 3 Wn. App. 2d 532, 538-539, 416 P.3d 1280 (2018).

At the heart of this case is the question of where is the boundary of an employee's common law duty of loyalty and where does it intersect with the legislative intent to protect low-wage earners under chapter 49.62 RCW.  Employees owe a duty of loyalty to employers during the period of employment, however, that loyalty is not unlimited. Chapter 49.62 RCW was specifically enacted to deal with low-wage employees, and the employer's choices under the statute are clear: either (i) limit the scope of any noncompetition agreement so that any restrictions are

reasonable or (ii) provide independent compensation to low-wage employees for agreeing to the noncompete agreement so that they can make an adequate living and not have to supplement their low wages. Accordingly, I respectfully concur.

_____
Whitener, J.

_____
Madsen, J.

_____
Lewis, J.P.T.

No. 102566-1

LEWIS, J.[*] (concurring)—I agree with the concurring opinion's approach to the issues in this case. However, I would narrow the scope of RCW 49.62.070(2)(b)'s duty of loyalty exception more than Justice Whitener suggests.

Although this is an issue of first impression, this court should not indirectly encourage employers to circumvent the statute's protections by requiring workers to sign agreements with broad restrictions limited only by the modifying term "reasonable." Nor should we force low-wage workers to constantly return to court to seek guidance on how far their employers can go. That approach places the burden of litigation on the people least able to afford it and assures that many workers will decide not to seek supplemental income in ambiguous situations.

In my view, during the period of employment, an employer may prohibit a low-wage employee from directly soliciting the employer's customers for a competitor's business. *Kieburtz & Assocs., Inc. v. Rehn*, 68 Wn. App. 260, 265, 842 P.2d 985 (1992). For workers protected by RCW 49.62.070, none of the other prohibited acts of competition discussed in *Kieburtz* apply. A noncompete agreement, based on the duty of loyalty, with broader prohibitions is void. The agreements David and Springer were required to sign as a condition of continued employment were clearly improper and the Court of Appeals should be reversed.

---

[*] Judge Robert A. Lewis is serving as a justice pro tempore of the Supreme Court pursuant to Washington Constitution article IV, section 2(a).

If an employer needs greater protection, they have a simple solution—pay the worker more than twice the applicable state minimum hourly wage. With these observations, I respectfully join in the concurrence.

_____
Lewis, J.P.T.